**In re NEWSOME AUTO CARE & BODY SHOP, Debtor.**

**Bankruptcy No. 90–40193–1–11.**

United States Bankruptcy Court, W.D. Missouri.

Feb. 5, 1991.

James W. Tippin, Kansas City, Mo., for debtor.

Kimberley Forseth, Office of Sp. Litigation, Tax Div., U.S. Dept. of Justice, Washington, D.C., for objecting creditor.

## MEMORANDUM AND ORDER DENYING OBJECTION AND ALLOWING CLAIM OF INTERNAL REVENUE SERVICE

ARTHUR B. FEDERMAN, Bankruptcy Judge.

### I. INTRODUCTION

Debtor in this Chapter 11 proceeding has objected to the claim filed by Internal Revenue Service in the amount of $69,561.53. Such claim represents amounts allegedly due for withholding and FICA taxes, FUTA taxes, and miscellaneous penalties and interest for periods beginning in 1985 and running through June 1989. In support of its objection to such claim, debtor contends that it did not have any employees during those years, that all workers in its shop are independent contractors and that, therefore, no taxes were due. The IRS contends that all workers were employees of the debtor and that the taxes previously assessed are therefore due. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b), and may enter final orders pursuant to 28 U.S.C. § 157(b)(2).

## II. FACTS

Debtor has been in business as a partnership since 1985, and is owned by Sterling Newsome and Charles Leggs, Sr. The business primarily performs services as an auto body shop and paint shop, but provides other services for vehicles as well. In 1987, the IRS performed an audit of the company and notified it that its workers were employees for whom appropriate taxes would have to be withheld and paid. Thereafter, taxes were assessed back to the first quarter of 1985. Beginning in 1988, debtor apparently withheld taxes from the workers' paychecks, and filed the necessary returns, but with one exception did not pay the taxes owed as they were withheld. This Chapter 11 proceeding was commenced on January 25, 1990.

■ The issue of whether workers are employees or independent contractors turns in large part on the type of work performed, the manner in which such workers are supervised, and the intent of the parties. Therefore, an understanding of debtor's business operation is required.

According to Mr. Newsome, he and Mr. Leggs meet with potential customers, prepare estimates of the work to be done, and then assign the job to one or more workers in the shop. He testified that once a worker is given a job, he is not told how to do the job, but is simply told what needs to be done. Workers are generally required to bring their own hand tools, as is standard in the industry. If a worker does not have his own tools, Mr. Leggs has in the past allowed such worker to borrow his own tools until the worker obtains his own. Other than that, the only equipment supplied to workers for use in their work is a frame machine, which is owned by the shop. Workers usually wear uniforms, which they purchase themselves. The supplies used to perform a job are provided by the debtor. Other than their tools and uniforms, workers are not required to invest any funds in the business in order to perform. They are not required to pay rent for the use of space, pay rent for tools they borrow, or take out insurance for their work.

Workers are paid a certain amount of compensation per job. At the time an estimate is prepared, Mr. Leggs or Mr. Newsome determines the amount of time which should be required to perform the job. If the job involves replacement of a particular part of the vehicle, there are standardized industry guides which the debtor relies upon to determine how long the job should take to complete. If not, one of the owners will simply estimate the time required based upon his own experience. Once the estimated time is determined, that amount is multiplied by a standard hourly rate charged by the shop for its labor. The resulting amount, plus the amount charged for any parts needed, is the total amount charged the customer for the job. That amount is charged irrespective of whether the actual repair job takes longer or shorter than the estimate. A worker who performs the repairs is similarly paid a set fee based on the estimated time to complete the job, irrespective of how long it actually takes to complete. That estimated time is multiplied by an hourly rate of pay for that worker, which rate of pay is agreed upon by the debtor and the worker at the time the worker applies for a job at Newsome. The range of rates used in computing the amount paid to a worker apparently runs from $8.50 to approximately $10.00 per hour. If several types of work are to be done on a vehicle, such as body work, frame work, and paint work, a different person is ordinarily assigned to each function.

In the event a worker uncovers "hidden damage" while working on a job, the worker will ordinarily notify Mr. Leggs. If the hidden damage is not substantial, Mr. Leggs will direct the worker to repair the hidden damage as well without additional charge to the customer. If the damage is substantial, however, Mr. Leggs will get in touch with the customer, or his or her insurance company, and receive authorization to increase the amount of the estimate because of such hidden damage. If there is such an increase, the amount paid to the worker for the job will be increased accordingly.

Workers are generally required to be at the business when it opens at 8:00 a.m. There is a time clock on the premises, which was installed soon after the 1987 IRS audit. However, such time clock was operational for only a short period of time, and has generally not been used by workers. According to Mr. Newsome, if a worker completes a job and does not want to take another job that day, he is free to go home no matter what time it is. One worker, Dexter McDonald, testified that he stayed away from work for approximately two weeks without notifying Newsome, and that when he was ready to come back to work, he did so and was accepted back without complaint. Mr. Newsome also testified that his workers are free to moonlight at other shops, although there was no evidence of any workers who in fact have so moonlighted.

Persons wishing to work at Newsome are required to fill out a form entitled "Application for Employment". Employment may be terminated by either the debtor or the worker at any time without notice.

Workers at Newsome are paid every Friday for work performed that week, whether or not Newsome has in fact been paid for the job. A worker who quits in the middle of a week, or in the middle of a job, will be paid for the job or portion of the job which he has completed. If a customer is not satisfied with the job, the worker who did that job is required to make the necessary repairs without additional compensation. Of course, if that worker is no longer employed at Newsome, another worker is paid to perform the necessary repairs.

Dennis Ray Stevenson, a former worker at Newsome, testified that Mr. Leggs usually decides which worker does which job, and that the workers have no real choice in what job they get. He testified that workers have no real control over what they are paid except by how quickly they complete the jobs given them. He also stated that he had one time had his pay docked for being late to work, and that he and other workers were in fact told the hours that they had to be on the job. Mr.

Stevenson considered himself to be an employee. He testified that he has worked at approximately 6 to 8 body shops in the Kansas City area, and that at two others, beside Newsome, the workers were treated as independent contractors for whom taxes were not withheld. He also testified that although Mr. Leggs and Mr. Newsome supervised his work, they did not train him or tell him how to do the job, but left that up to him.

Mr. McDonald testified that employees were docked if they went home early, or if they didn't perform services such as pulling customer cars into the garage to be stored overnight.

## III. CONCLUSIONS

As both parties have suggested, the issue that must be determined is whether the debtor's auto body workers are employees or independent contractors. Employee is defined, in 26 U.S.C. § 3121(d)(2), as "any individual who, under the usual common law rules applicable in determining the employer-employee relationship, has the status of an employee."

■ The debtor has the burden of proof to demonstrate that the workers are independent contractors. *Beatty v. Halpin,* 267 F.2d 561, 564 (8th Cir.1959); *McGuire v. United States,* 349 F.2d 644, 649 (9th Cir.1965); *In re McAtee,* 115 B.R. 180, 182 (N.D. Iowa 1990); Bankruptcy Rule 3001(f); See, *United States v. Anderson,* 269 U.S. 422, 433, 46 S.Ct. 131, 132, 70 L.Ed. 347 (1926); *United States v. Rindskopf,* 105 U.S. 418, 422, 26 L.Ed. 1131 (1881).

■ Debtor relies primarily on *In re Imholte,* 118 B.R. 103 (Bkrtcy.D.Alaska 1990), a case which involved the status of auto body repairmen. There, the court outlined the relevant criteria to be used in making this determination:

Factors to be considered, in making the determination, according to the Supreme Court, are the industry's right to control how work shall be done, opportunities for profit or loss, investment in facilities, permanency of relation and skill required in the claimed independent operation.

No one factor is controlling, "nor is the list complete." *United States v. Silk,* 331 U.S. 704, 716, 67 S.Ct. 1463, 1469–70, 91 L.Ed. 1757 (1947). The court also pointed out "[I]t is quite impossible to extract from the statute a rule of thumb to define the limits of the employer-employee relationship." Id. at 716, 67 S.Ct. at 1469.

In determining whether the workers are employees or contractors, the Court must consider "the total situation, including the risk undertaken, the control exercised, [and] the opportunity for profit from such management ..." *United States v. Silk,* 331 U.S. 704, 719, 67 S.Ct. 1463, 1471, 91 L.Ed. 1757 (1947). Here, there appears to be scant basis for treating these workers as anything other than employees. Unlike *Imholte,* these workers do not have a written contract treating them as contractors, do not have their own work area, and do not hire their own assistants. Debtor has tried to fit its situation into that of *Imholte* by pointing out that its workers supplied their own tools and uniforms. Some cases have stated that where workers provide their own tools, it may be indicative of an independent businessman relationship, because a person who has a substantial investment is more akin to an independent contractor than an employee. However, the evidence here showed that tools were available for workers who did not have their own. Furthermore, the tools involved were hand tools which apparently did not require a substantial investment. And as to the uniforms, some workers purchased them and others did not. None of these factors involve the type of investment which would justify treating these workers as independent businessmen.

Debtor also argues that its workers are free to work their own hours, and to accept or reject work as they choose. The evidence, however, is not so. Workers are required to be there when the business opens up in the morning. At one point, apparently out of frustration with the workers' tardiness, the debtor began docking workers for being late. And, the evidence was that Mr. Leggs himself decided which worker would perform a particular job, not the worker.

Finally, debtor contends that these workers had the right to control the details of the work. Generally, an employee-employer relationship exists if "the person for whom services are performed has the right to control and direct the individual who performs the services, not only as to the result to be accomplished by the work but also as to the details and means by which that result is accomplished ... [I]t is not necessary that the employer actually direct or control the manner in which the services are performed; it is sufficient if he has the right to do so." 26 C.F.R. Section 31.-3121(c); *Air Terminal Cab, Inc. v. United States,* 478 F.2d 575, 579 (8th Cir.1973) (quoting and emphasizing the Treasury Regulations); *Nuttelman v. Vossberg,* 753 F.2d 712, 713 (8th Cir.1985). "Even if actual control was absent, it is the right to control which is determinative.... Where the nature of a person's work requires little supervision, there is no need for actual control." *Air Terminal Cab, Inc. v. United States,* 478 F.2d 575, 580 (8th Cir. 1973). See also *McGuire v. United States,* 349 F.2d 644, 646 (9th Cir.1965); *Mav Freight Service, Inc. v. United States,* 462 F.Supp. 503, 508 (E.D.N.Y.1978).

According to Mr. Newsome, these debtors were "professionals" who were simply told to perform a particular job, without being told the details of how to do it. Thus, if Mr. Leggs told a particular worker to replace a fender, he might not tell the worker step-by-step how to do the job. However, the debtor is not a custom body shop for which highly skilled labor is required. Unlike *Imholte,* where workers were paid based on a rate five times minimum wage, these workers are paid based on an hourly rate of $8.50 to $10.00. Unlike *Imholte,* these workers never provide estimates for jobs independent of the debtor. They do not hire their own assistants. Workers do have some control over their income because they are paid more if they work faster. However, the mere fact that a worker is paid on a "piecework" basis does not provide that worker with the type of opportunity for profit or loss which char-

acterizes an independent businessman. And the mere fact that a worker is expected to know how to do his job without constant supervision does not make him an independent contractor.

 The most compelling basis for finding against the debtor is the intent of the parties and their belief as to the relationship. See, *E & W Auto, Inc. v. U.S.,* 35 A.F.T.R.2d 75–794, 75–795 (E.D.Wis.1975). Debtor was notified by the IRS in 1987 that its workers were considered to be employees. There is no evidence that debtor formally contested that determination. Instead, it changed its procedures and began withholding taxes from workers' checks. The withholding of taxes from employees' checks is a factor to be considered in favor of an employer-employee relationship. *Professional and Executive Leasing, Inc. v. C.I.R.,* 862 F.2d 751, 753 (9th Cir.1988). Both debtor and its workers treated themselves as employer and employees by having taxes withheld. The problem is that the debtor simply failed to pay to the IRS the amounts so withheld. Debtor now in effect asks this Court to ratify such failure. Debtor does not propose to pay the withheld funds to the IRS, or for that matter to return such funds to the workers from whom the funds were withheld. Debtor's actions in collecting these funds and in filing the returns shows that it considered the workers to be employees, rather than independent contractors, and that an employer-employee relationship existed. *Kizzier v. United States,* 598 F.2d 1128, 1131–32 (8th Cir.1979); *United States v. MacKenzie,* 777 F.2d 811, 821 (2nd Cir. 1985)[1].

A business decision to use either employees or independent contractors carries with it both benefits and burdens. If a business decides to use independent contractors, it does not provide social security and unemployment coverage for its workers, and need not withhold taxes from payment to workers nor make any payments to the IRS for the employees' benefit. Alternatively, if a business decides to use employees, it must withhold and collect funds for the benefit of employees and the government, and pay these funds over to the IRS. In the present matter, debtor seeks to keep the benefit of the money it withheld from its employees' checks without the burden of paying such funds over to the government.

Accordingly, the objection to the claim of the Internal Revenue Service is overruled, and the claim is allowed.

---

**1.** "... it was appropriate for the Court to consider the failure to file Form 1099 as belying petitioners assertions that they reasonably believed the employees in question to be independent contractors." *United States v. MacKenzie,* 777 F.2d at 821.