James Y. LEE, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civ. A. No. W–93–CA–232.

United States District Court,
W.D. Texas,
Waco Division.

June 9, 1994.

Farley P. Katz, Matthews & Branscomb, San Antonio, TX, for plaintiff.

Michael D. Powell, U.S. Dept. of Justice, Dallas, TX, for defendant.

### MEMORANDUM OPINION AND ORDER

WALTER S. SMITH, Jr., District Judge.

Came on to be considered the Plaintiff's Motion for Summary Judgment, the Defendant's Response, and the Plaintiff's Reply.

#### I. *Background*

This lawsuit involves a tax dispute between the Plaintiff, James Y. Lee, and the Defendant, the United States of America. In 1990, the Plaintiff was a manufacturer of clothing

in the Killeen, Texas area. He maintained a factory for the production of garments and had employees working at the factory. The employees at the factory performed finishing work on garments sewn by others outside the factory, and were treated as employees by the Plaintiff for federal income taxation purposes.

In addition to these employees who worked inside the factory, the Plaintiff contracted with various individuals (hereinafter referred to as the "piece-workers") to manufacture or assemble garments for the Plaintiff on a contract basis. These piece-workers would come to the Plaintiff's factory to inspect the sew guides of a particular garment that needed to be produced, and would negotiate a quantity and price if interested. No piece-worker was ever required to manufacture a particular garment, and each undertaking was separately and independently negotiated.

The piece-workers typically worked in a garage or building adjacent to their homes. The Plaintiff exercised no supervision or control over the piece-workers' method of operation or hours worked. All of the piece-workers owned at least one indispensable piece of sewing equipment, a commercial grade sewing machine. These commercial sewing machines generally cost around $1,000.00, but at least one of the piece-workers bought a used machine for $400.00. With the exception of a few individuals who did insubstantial amounts of work for the Plaintiff, all of the piece-workers also owned a sew-serger (a specialized industrial machine which is used to sew the inner seams on garments which have a specialized sewing pattern). These sew-sergers cost anywhere from $1,400.00 to $2,600.00, but at least one of the piece-workers bought a used machine for $800.00. Some of the piece-workers also owned a computerized · sewing machine, costing about $2,400.00.

In 1990, the Plaintiff contracted with at least 118 piece-workers. Of those, only 9 earned more than $10,000.00, and the average amount paid to each piece-worker was $3,178.56. During 1990, the Plaintiff treated the piece-workers as independent contractors for federal tax purposes, and did not pay withholding or social security. The IRS has not disputed the Plaintiff's classification for purposes of withholding, but contends that the piece-workers must be treated as employees for social security tax purpose. The IRS relies upon Internal Revenue Code Section 3121(d)(3), which is a special statutory provision under which certain "home workers" are treated as employees for social security tax purposes only.

## II. *Summary Judgment*

Summary judgment is appropriate only if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). The party seeking summary judgment bears an "exacting burden of demonstrating that there is no actual dispute as to any material fact in the case." *Impossible Electronic Techniques, Inc. v. Wackenhut Protective Systems, Inc.*, 669 F.2d 1026, 1031 (5th Cir.1982).

■ In determining whether the movant has met its burden, the Court must view the evidence presented and all factual inferences from the evidence in the light most favorable to the party opposing summary judgment. *See id.* at 1031. All reasonable doubts as to the existence of a genuine issue of material fact must be resolved against the movant. *See id.* at 1031; *Jones v. Western Geophysical Co.*, 669 F.2d 280, 283 (5th Cir.1982). When determining whether to grant summary judgment, the Court is merely determining whether a factual dispute exists and is not required to resolve those disputes. *See Jones*, 669 F.2d at 283. The fact that it appears to the Court that the non-movant party is unlikely to prevail at trial or that the movant's statement of facts appears more plausible is not a reason to grant summary judgment. *See id.* at 283.

■ Once the movant has shown the absence of material factual issues, the opposing party has a duty to respond with any factual assertion that would preclude summary judgment. *See Cleckner v. Republic Van & Storage Co.*, 556 F.2d 766, 771 (5th Cir.1977). Rule 56(e) of the Federal Rules of Civil Procedure provides that "[w]hen a motion for summary judgment is made and supported

as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him." FED.R.CIV.P. 56(c). In this respect, the burden on the non-moving party is not especially heavy; however, he must show specific facts that present a genuine issue of material fact worthy of trial rather than showing mere general allegations. *See Gossett v. Du–Ra–Kel Corp.*, 569 F.2d 869, 872 (5th Cir.1978).

### III. *Discussion*

Section 3121(d) of the Internal Revenue Code of 1986 ("Code") provides, in pertinent part, that

[T]he term "employee" means—

\*   \*   \*   \*   \*   \*

(3) any individual (other than an individual who is an employee under paragraph (1) or (2)) who performs services for remuneration for any person—

\*   \*   \*   \*   \*   \*

(C) as a home worker performing work, according to specifications furnished by the person for whom the services are performed, on materials or goods furnished by such person which are required to be returned to such person or a person designated by him

\*   \*   \*   \*   \*   \*

if the contract of service contemplates that substantially all of such services are to be performed personally by such individual; except that an individual shall not be included in the term "employee" under the provisions of this paragraph if such individual has a substantial investment in facilities used in connection with the performance of such services (other than facilities for transportation), or if the services are in the nature of a single transaction not part of a continuing relationship with

the person for whom the services are performed.

\*   \*   \*   \*   \*   \*

For purposes of this motion, the Plaintiff concedes that the piece-workers are (1) individuals who perform services for remuneration, (2) according to specifications furnished by him, (3) on materials or goods furnished by him which are required to be returned to him, (4) under contracts of service which contemplate that substantially all of such services are to be performed personally by such individuals, and (5) as part of a continuing relationship with him. Therefore, the sole remaining issue for summary judgment is whether the piece-workers have a "substantial investment in facilities used in connection with the performance of such services (other than in facilities for transportation)." If they do, then the statute clearly exempts the Plaintiff from treating them as "employees."

First, the Plaintiff argues that the piece-workers had a substantial investment in facilities used in connection with the performance of their services, and were therefore not "employees" as set forth in the Code. Second, the Plaintiff argues that even if the piece-workers should properly be categorized as "employees," the proposed taxes are barred by the "safe harbor" provision found in Section 530 of the Code, which protects employers who have a reasonable basis for their tax decision.

A. *ISSUE ONE: Whether the piece-workers had a substantial investment in facilities used in connection with the performance of their services.*

█  The Plaintiff argues that under the undisputed facts of this case, the piece-workers had a substantial investment in facilities used in connection with the performance of their services, namely, industrial grade sewing equipment with values in excess of $2,500.00.[1] Given the fact that the average amount paid to each piece-worker was $3,178.56, and that only 9 of the piece-workers earned in excess of $10,000.00, the Plain-

---

1. This reflects a minimum of $800.00 for the sewing machine, $1,400.00 for the sew-serger, and $300.00 for attachments.

tiff contends that the investments made by the piece-workers were substantial as a matter of law.[2]

The Defendant does not dispute that each of the piece-workers had a commercial grade sewing machine. Nevertheless, the Defendant asserts that the Plaintiff has failed to show the actual investment of each piece-worker, and simply makes unsupported assumptions about what each piece-worker spent.[3] The Defendant also points out that the Plaintiff has failed to demonstrate which piece-workers had a sew-serger machine, and the Plaintiff simply concludes that those piece-workers who did more than an insubstantial amount of work must have had one.[4] The Defendant argues that conclusory allegations by the Plaintiff are insufficient to support the granting of summary judgment.

In addition to challenging the Plaintiff's cost figures, the Defendant also asserts that the Plaintiff's comparative analysis of cost of equipment to revenue earned is misleading because such fails to take into account the long-term life of the equipment. Assuming that the average life of sewing and sew-serger machines is 6 years, and further assuming that the average piece-worker would earn $19,071.36 ($3,178.56 × 6) on an investment in facilities that amounted to at least $2,500.00, the investment in facilities would only be 13 percent of earnings. The Defendant submits that this does not amount, as a matter of law, to a "substantial" investment.

The Defendant's final argument is that since the piece-workers also use their equipment for personal uses, then that equipment should not be included in determining whether the piece-worker has a substantial investment in facilities. The Defendant cites several revenue rulings for this proposition.

The case law addressing the issue of what amounts to a substantial investment is sparse, and the parties submit little in support of their respective positions. Upon a careful review of the few cases and revenue rulings that deal with this matter, though, the Court is of the opinion that the piece-workers did have a substantial investment in facilities and that they were not employees as a matter of law.[5] Therefore, summary judgment is appropriate.

Webster's Dictionary defines "substantial" as "considerable in amount, value or worth." Although there is some dispute as to the actual value of the various sewing equipment used by the piece-workers, there is no genuine issue for trial as to whether the amounts could be considered "substantial." Compared with the entire body of case law which can be found addressing this issue, the value of the sewing equipment in this case is clearly more "substantial" than those cases in which the courts determined that an employer-employee relationship existed.

### 1. Case Law Finding No Substantial Investment In Facilities:

Those cases in which the courts have determined that no substantial investment in facilities existed involved much smaller investments than the present case.

*United States v. Silk*, 331 U.S. 704, 67 S.Ct. 1463, 91 L.Ed. 1757 (1947), involved the

---

2. The Plaintiff also believes that the same is true for those few workers who performed an insubstantial amount of work (such as Ms. Lehde who earned a nominal $403.00, yet had an investment in equipment exceeding $800.00).

3. For example, the Defendant points out that Ms. Torres only paid $1,700.00 for her sewing machine and sew-serger ($400.00 of which was for the sewing machine). Additionally, Ms. Lehde appears to have bought her machine on a payment plan, or took over someone else's payments. The Defendant inquires: How many piece-workers obtained their sewing machine in a similar manner? How many purchased used machines? How many obtained a sewing machine through some other method?

4. The Defendant posits: How much is an "insubstantial amount of work"?

5. Generally, courts have held that the determination of whether an employer-employee relationship exists is a mixed question of fact and law. *Spicer Accounting Inc. v. United States*, 918 F.2d 90, 92 (9th Cir.1990); *Atlantic Land and Improvement Co. v. United States*, 790 F.2d 853, 855 (11th Cir.1986) (citing *Pullman–Standard v. Swint*, 456 U.S. 273, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982)). The specific question of whether or not a person is an employee or an independent contractor is a question of law, i.e. a legal conclusion to be drawn from the facts. *Democratic Union Organizing Committee, et al. v. N.L.R.B.*, 603 F.2d 862, 906 (D.C.Cir.1978).

issue of whether unloaders of coal at a coal-yard were employees or independent contractors for social security tax purposes. Even though the unloaders worked their own hours at an agreed price per ton, supplied their own tools, and were permitted to work for others as they saw fit, the Supreme Court held that the unloaders were employees because their only investment was "picks and shovels" and "they had no opportunity to gain or lose except from the work of their hands and these simple tools." *Silk*, 331 U.S. at 717–18, 67 S.Ct. at 1470. The Supreme Court found it insignificant that they worked their own hours, noting instead that they worked in the course of their employer's trade or business, and were part of the group that the Social Security Act was intended to aid. *Id.* at 718, 67 S.Ct. at 1470–71.

*Avis Rent A Car System, Inc. v. United States*, 503 F.2d 423 (2nd. Cir.1974), involved the issue of whether car shuttlers were Avis employees or independent contractors. After citing the seven factors to consider, the court held that the car shuttlers were employees because they had no investment in the car shuttling equipment. *Avis* at 430. In that regard they were like the coal un-loaders in *Silk* because they undertook none of the costs of shuttling cars, and they had no opportunity for profit because of their own management skills. *Id.* Rather, their only ability to increase their profits would be by moving the cars faster (just as the coal un-loaders could only profit more by shovelling more quickly). *Id.*

*Mav Freight Service, Inc. v. United States*, 462 F.Supp. 503 (E.D.N.Y.1978), involved the issue of whether the plaintiff was entitled to a refund of FICA taxes paid for a number of individuals unloading shipments of beef. In considering the seven factors set forth in *Avis*, the court noted that the unloaders had no substantial investment in tools or equipment. Their only investment was in meat hooks (which cost $2 or $3 each), gloves, and gowns. Therefore, the Court determined that the unloaders were employees. *Mav Freight Service* at 508.

*Gilmore v. United States*, 443 F.Supp. 91 (D.Md.1977), also involved the issue of whether the plaintiff was entitled to a tax refund for FICA taxes paid for certain magazine solicitors. Because the solicitors had no substantial investment in equipment, they were employees. *Gilmore* at 96.

*Wolfe v. United States*, 77–1 T.C. (CCH) 9346, 1977 WL 1124 (S.E.N.D.1977), involved the issue of whether various beauticians were employees of the beauty salon operator, or independent contractors. The court held:

> The beauty operators' tools and supplies consisting of razors, scissors, capes, rubber gloves, dispensary for wave set, clamps and permanent wave rods, did not require substantial investment. The investments here, though obviously greater than the investments of Avis employees, were not so substantially greater than the investments of the coal loaders in *Silk* as to create an independent contractor status.

*Wolfe.*

Therefore, the beauticians were held to be employees.

*Smith v. United States*, 75–2 T.C. (CCH) 9793, 1975 WL 708 (N.D.Tex.1975), was a case in which a moving company sought a social security tax refund for amounts paid for drivers. Because the drivers did not have a substantial investment in equipment, they were held to be employees. The court stated that "[t]he drivers had a very small investment in tools and equipment," and that their "only expenditures were for a few hand tools which were used to assemble and disassemble furniture, and make minor adjustments on their trucks." *Smith.*

Finally, in the bankruptcy opinion styled *In re Newsome Auto Care and Body Shop*, 91–1 T.C. (CCH) 50,084, 1991 WL 14035 (Bankr.W.D.Mo.1991), the debtor objected to the IRS' claim for taxes due on certain mechanics. The court rejected the debtor's contention that these mechanics were independent contractors, and noted that even though many of them had their own tools, the evidence here showed that tools were available for workers that did not have their own, and the tools involved were hand tools that did not require a substantial investment.

### 2. Case Law Finding a Substantial Investment In Facilities:

Those cases in which the courts have determined that a substantial investment in facilities existed involved similar investments as those in the present case.

In addition to discussing the status of the coal unloaders as employees, *United States v. Silk*, 331 U.S. 704, 67 S.Ct. 1463, 91 L.Ed. 1757 (1947), also involved the issue of whether certain truck drivers should be characterized as independent contractors or employees. The coal company did not own any trucks of its own, but contracted with workers who owned their own trucks to deliver coal at a uniform price per ton. *Silk* at 706, 67 S.Ct. at 1464–65. A trucker is paid out of the price he receives from the customer, is free to come and go as he pleases, and may work for other companies. *Id.* at 707, 67 S.Ct. at 1465. The Supreme Court held that unlike the unloaders, the truckers are left with so much responsibility for investment and management, they must be independent contractors. *Id.* at 719, 67 S.Ct. at 1471. The Supreme Court stated:

> These driver-owners are small businessmen. They own their own trucks. They hire their own helpers. In one instance they haul for a single business, in the other for any customer. The distinction, though important, is not controlling. It is the total situation, including the risk undertaken, the control exercised, the opportunity for profit from sound management, that marks these driver-owners as independent contractors.

*Id.* at 719, 67 S.Ct. at 1471.

This Court believes that the critical distinction between the unloaders and the truckers was the truckers' substantial investment in their trucks, as opposed to the unloaders' minimal investment in picks and shovels.

*Jones v. United States*, 76–2 T.C. (CCH) 9607, 1976 WL 1096 (N.D.Ok.1976), also involved substantial investments by certain service station operators, thereby making them independent contractors for tax purposes. The trial judge made a finding of fact that each plaintiff's investment in his or her station ranged from $6,000.00 to $25,000.00, and consisted of land, buildings, pumps, tanks, compressors, signs and some fixtures. Based upon this finding of fact, the judge concluded that the service station operators under consideration were independent contractors, not employees, and were therefore entitled to a tax refund.

The case most analogous to the present one is a district court decision from Kentucky over 50 years ago. In *Kentucky Cottage Industries, Inc. v. Glenn*, 39 F.Supp. 642 (W.D.Ky.1941), the plaintiff corporation was engaged in the business of making comforters, quilts, and similar articles which were made by hand. The plaintiff would determine a certain design, and stamp that design and specifications upon the material to be used. The plaintiff then turned the material and design over to an individual who was willing to do the work according to specification, a contract was agreed upon, and the workers (who were the wives and daughters of farmers living in the area) would take the materials home where the work would be done. The plaintiff did not provide a place to work, or the tools to do the work. The plaintiff exercised no control over the workers' hours or method of operation, but did have the right to accept or reject the final finished product. Each piece of work was a separate matter of business, and there was no obligation on either party to continue the relationship. *Kentucky Cottage Industries* at 643–44. The plaintiff brought an action against the IRS to recover social security taxes paid on these workers. The trial court held that the plaintiff was entitled to a refund because the workers were independent contractors, not employees. One of the factors that the Court relied upon was that the workers in this case furnished their own tools. *Id.* at 644.

### 3. Application:

The cases discussed in part III(A)(1) of this Memorandum Opinion and Order involve employee investments in simple tools and equipment that were not substantial, and thus did not meet the exception under consideration here. It is quite certain that the piece-workers' investments in sewing equipment were much more substantial than the investments in these cases.

The cases discussed in part III(A)(2) of this Memorandum Opinion and Order, on the

other hand, demonstrate that the piece-workers in this case should be considered independent contractors as a matter of law. As in *Kentucky Cottage Industries,* the piece-workers would come to the Plaintiff's factory to inspect the sew guides of a particular garment that needed to be produced, and would negotiate a quantity and price if interested. No piece-worker was ever required to manufacture a particular garment, and each undertaking was separately and independently negotiated. The piece-workers were free to work elsewhere. They worked in a garage or building adjacent to their homes. They were skilled workers. They controlled their own method of operation and hours, and could make management decisions that would affect their profits.

Most importantly, though, all of the piece-workers had substantial investments in equipment, investments more analogous to the cases discussed in Part III(A)(2) of this Memorandum Opinion and Order. Each piece-worker owned at least one indispensable piece of sewing equipment, a commercial grade sewing machine. These commercial sewing machines generally cost around $1,000.00. With the exception of a few individuals who did insubstantial amounts of work for the Plaintiff, each piece-worker also owned a sew-serger. These sew-sergers cost anywhere from $1,400.00 to $2,600.00. Some of the piece-workers also owned a computerized sewing machine, costing about $2,400.00. Even assuming that some of the piece-workers got better deals on their equipment than others, the cost of such equipment was clearly substantial as a matter of law.

It is also highly relevant that in 1990, only 9 of the 118 piece-workers earned more than $10,000.00, and the average amount paid to each piece-worker was $3,178.56. Even assuming that the sewing equipment has an average life of 6 years, the Court is of the opinion that these investments were substantial as a matter of law.

B. *ISSUE TWO: Whether the proposed taxes are barred by the "safe harbor" provision found in Section 530 of the Code.*

Plaintiff argues that the imposition of the proposed taxes is barred by the "safe harbor" provision found in Section 530 of the Code (even if there is a fact issue as to whether the investments were substantial). This provision was enacted to protect taxpayers who had taken reasonable positions with respect to employment tax classification of their workers.

Even if this Court is wrong in its legal conclusions above, it is certainly a close issue, and the Plaintiff had taken a reasonable position with respect to the employment tax classification of his workers. Therefore, summary judgment is equally available on this ground.

### IV. *Conclusion*

Based upon the foregoing, it is clear that the Plaintiff is entitled to summary judgment as a matter of law. Accordingly, it is

**ORDERED** that Plaintiff's Motion for Summary Judgment is **GRANTED**. It is further

**ORDERED** that Plaintiff is entitled to a refund of $200.71, together with such interest and costs as are allowed by law. It is further

**ORDERED** that the Defendant's counterclaim against the Plaintiff is **DISMISSED WITH PREJUDICE**. It is further

**ORDERED** that the Defendant take nothing on its counterclaim against the Plaintiff. It is further

**ORDERED** that all pending motions not previously ruled on are **DENIED** as moot.

