Melvin McGUIRE and Alvina McGuire,
Appellants,

v.

UNITED STATES of America,
Appellee.

RAHIER TRUCKING, INC., Appellant,

v.

UNITED STATES of America,
Appellee.

Nos. 19898, 19899.

United States Court of Appeals
Ninth Circuit.

Aug. 5, 1965.

John S. Moore, Velikanje, Moore & Countryman, Yakima, Wash., for appellants.

John B. Jones, Jr., Acting Asst. Atty. Gen., Lee A. Jackson, I. Henry Kutz, Robert I. Waxman, Harry Marselli, Attys., Dept. of Justice, Washington, D. C., Frank R. Freeman, U. S. Atty.,

Ronald Hull, Asst. U. S. Atty., Spokane, Wash., for appellee.

Before ORR, KOELSCH and DUNIWAY, Circuit Judges.

ORR, Circuit Judge:

Taxpayers' unsuccessful suit for refund of federal withholding, unemployment, and social security taxes paid for the years 1959–1962 is the basis for this appeal. The District Court sitting without a jury dismissed the suit and denied motions for judgment notwithstanding the verdict and for a new trial.

The single question before us is whether the District Court correctly sustained the determination of the Commissioner of Internal Revenue that certain workers were taxpayers' employees and hence taxpayers were liable for taxes under the Federal Insurance Contributions Act, Federal Unemployment Tax Act, and withholding tax provisions pursuant to sections 3101–3125, 3301–3308 and 3401–3404 of the Internal Revenue Code of 1954.

Taxpayers were owners and operators of non-scheduled motor freight carriers engaged in hauling produce and fruit between the Yakima Valley in Washington and various points in California, chiefly the Los Angeles area. Taxpayers' operations consisted of picking up goods and transporting them to appointed destinations. Under the usual contract with its customers taxpayers were required to deliver their cargo to the loading dock of the receiver and unload it. The unloading operation was an integral part of taxpayers' contractual obligation, and taxpayers were responsible for the condition of the cargo during the unloading.

To perform the unloading phase of its operations taxpayers were required to engage the services of individuals other than their drivers because of Teamster Union policy forbidding drivers to unload. Taxpayers' drivers were given authority and were generally responsible for hiring these individuals, colloquially referred to as "swampers." While procedures at various destinations varied in minor details, drivers generally hired one or two unloaders at specific areas near the destination of their cargo where unloaders were known to congregate. Drivers were free to engage the services of any of the unloaders present. In most areas where taxpayers delivered their cargoes fees were set by agreement between the Teamsters Union and the California Trucking Association. These fees were standard and not subject to negotiation. They were usually paid in cash by the driver on a per-job basis from a travel advance provided by taxpayers.

Once engaged, unloaders would accompany taxpayers' trucks to their first destination. If more than one destination was involved, the unloaders usually remained with the truck. Where destinations were widely separated, however, drivers might find it necessary to hire other unloaders because union policy provided that unloaders were to work only within a defined territory and not cross territorial boundaries.

After a truck was backed into the loading dock at a delivery point unloaders would unload that portion of the cargo to be delivered at that destination. Drivers were in a position to supervise the unloading if necessary, but were also free to sleep or leave the truck for meals. Otherwise, they sat and watched the unloading operation. Evidence of actual supervision by drivers was minimal, but little supervision was required because the nature of the work was uncomplicated and because unloaders were generally familiar with the procedures of the job. Drivers could dismiss unloaders at any time for inefficiency or negligence though there was no showing that this had ever been necessary. No equipment was furnished unloaders by the taxpayers, and in most instances unloaders did not furnish any.

■ The definition of "employee" in each of the Acts under which taxpayers were assessed is the same in all material aspects, and the Regulations under the relevant Internal Revenue Code sections set out the usual common law factors

against which the employee-employer relationship is to be measured.[1] Generally, right to control and direct the specific manner in which an individual works toward the desired end product of his work is the fundamental element of the employee-employer relationship; but where doubt exists as to the nature of the relationship, courts must look to the particular facts of each case. The total situation of the parties is controlling.

■ The determination of an individual's status as an employee or an independent contractor is one of fact. Baker v. Texas & P. R. Co., 359 U.S. 227, 79 S.Ct. 664, 3 L.Ed.2d 756 (1959). Where, as here, the trial has been by the court sitting without a jury, the familiar rule that the Court's findings must stand unless clearly erroneous applies. Commissioner v. Duberstein, 363 U.S. 278, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960). No clearly erroneous findings are present in the instant case.

In support of their contention that unloaders are independent contractors taxpayers point to the absence of evidence of actual control, the impermanent nature of the working relationship, and the facts that unloaders work at their own speed, are paid by the job, and are at times subject to the directions of receivers at the loading docks who are not taxpayers' employees.

That the status of unloaders in the circumstances before us is ambiguous is highlighted by two recent decisions from the Fourth Circuit arising from circumstances substantially the same as those present here. In one case the District Court sitting without a jury sustained the taxpayers' position that unloaders were independent contractors. Bonney Motor Express, Inc. v. United States, 206 F.Supp. 22 (E.D.Va.1962). In the second case, on substantially the same facts, the Court of Appeals for the Fourth Circuit affirmed a judgment based on a jury verdict in the District Court finding the unloaders to be employees. Service Trucking Co., Inc. v. United States, 347 F.2d 671 (decided June 28, 1965).

■ The Trial Court in the instant case recognized that conflicting inferences resulted from the application of the various common law tests to the facts before the Court and ruled that taxpayers had failed to sustain their burden of proof of showing, by a preponderance of the evidence, that the Commissioner's determination of the unloaders' employee status was incorrect. This finding has ample support in the evidence.

■ The nature of the unloaders' work is such that little supervision is necessary. Because unloaders are paid by the job rather than on a time basis, it is to their economic advantage to work rapidly and efficiently. Rapid and efficient handling is taxpayer's only interest in the unloaders' work. The record discloses that taxpayers' drivers did on occasion reprimand unloaders for careless handling of cargoes. The absence of need to control should not be confused with the absence of right to control. The right to control contemplated by the Regulations relevant here and the common law as an incident of employment requires only such supervision as the nature of the work requires.

The findings of the Trial Court are not clearly erroneous. The judgment is affirmed.

1. Int.Rev.Code of 1954, § 3121(d)(2) is representative in defining "employee" as: "any individual who, under the usual common law rules applicable in determining the employer-employee relationship, has the status of an employee; * * *."