**PROFESSIONAL & EXECUTIVE LEASING, INC., an Idaho corporation, Petitioner–Appellant,**

v.

**COMMISSIONER INTERNAL REVENUE SERVICE, Defendant–Appellee.**

No. 87–7379.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 6, 1988.

Decided Dec. 6, 1988.

Thomas G. Walker, Jr., Twin Falls, Idaho, for petitioner-appellant.

Michael J. Roach, Asst. U.S. Atty., Washington, D.C., for defendant-appellee.

Before FLETCHER, BOOCHEVER and TROTT, Circuit Judges.

BOOCHEVER, Circuit Judge:

Professional & Executive Leasing, Inc. (PEL) appeals a decision by the tax court in its action for declaratory relief. The tax court determined that PEL's retirement plans did not qualify under I.R.C. § 401 because the plans covered individuals who were not employees of PEL. Thus, the requirement of § 401(a)(2) that a qualifying plan be for the "exclusive benefit" of the employer's employees was not met. We Affirm.

## FACTS

PEL is a for profit corporation organized under the laws of the State of Idaho for the purpose of "leasing" management personnel, consultants, and licensed professionals (such as attorneys, accountants, dentists, and engineers) to businesses (recipients).

PEL filed a petition for declaratory relief seeking a determination that its retirement plans met the requirements of I.R.C. § 401. PEL entered into an arrangement entitled "Contract of Employment" (contract) with the individuals covered by the plans. Workers under the contract participate in a pension plan, benefit plan, and a fringe benefit program. PEL also entered into an arrangement with the recipients entitled "Personnel Lease Contract" (lease).

PEL prepares the workers' paychecks and withholds Federal and state income taxes and pays Social Security and Federal unemployment taxes for each worker. PEL also pays workmen's compensation premiums and state unemployment insurance premiums for all workers.

Of the 73 workers in contract agreements in August 1985, almost all had a pre-existing ownership or equity interest in the recipient to which they were leased. The lease requires that any worker employed by a recipient must terminate their employer-employee relationship before the lease is executed.

The only review of workers conducted by PEL is to determine that they are licensed under state or local law to practice their professions. Under the contract, PEL retains the right to terminate a worker or reassign a worker to a different recipient. Although PEL has terminated one worker, none has been reassigned. The lease provides that PEL and the recipients may increase or decrease monthly lease payments for the services of a worker at any time. The contract provides that PEL and the worker can also increase or decrease salary of the worker at any time.

Equipment, tools, and office space for the workers are provided by recipients. The lease also requires the recipient to provide the worker with malpractice insurance in appropriate cases. The contract provides that PEL cannot infringe on the worker's exercise of his professional judgment in rendering services to the public. Workers control the details of their performance of services. Either PEL or the worker may terminate the contract at any time by written notification.

## ANALYSIS

■ The issue we address here is whether the tax court erred in determining that the retirement plan offered by PEL did not qualify under I.R.C. § 401 because it included non-employees and therefore was not exclusively for the benefit of employees.

The appellate court reviews decisions of the United States tax court on the same basis as decisions in civil bench trials in district court. *Mayors v. Commissioner of Internal Revenue*, 785 F.2d 757, 759 (9th Cir.1986). The trial judge's findings of fact will not be set aside unless clearly erroneous, Fed.R.Civ.P. 52(a), and legal issues are reviewed de novo. *United States v. McConney*, 728 F.2d 1195, 1200–01 (9th Cir.1984) (en banc), *cert. denied*, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984); Fed.R.Civ.P. 52(a).

The determination of an employer-employee relationship involves a mixed question of law and fact. Because the decision is predominantly one of fact and does not involve constitutional issues we apply a clearly erroneous standard of review. *See Id.* at 1202–03. The Tenth Circuit has similarly concluded that the determination of an employer-employee relationship is a question of fact. *Marvel v. United States*, 719 F.2d 1507, 1515 (10th Cir.1983).

The courts have considered several factors in determining the existence of the employer-employee relationship. Among those factors are: (1) the right to control the details of the work; (2) furnishing of tools and the work place; (3) withholding of taxes, workmen's compensation and unemployment insurance funds; (4) right to discharge; and (5) permanency of the relationship. *See United States v. Silk*, 331 U.S. 704, 714–16, 67 S.Ct. 1463, 1468–69, 91 L.Ed. 1757 (1947); *see also Simpson v. Commissioner*, 64 T.C. 974, 984–85 (1975) [1975 WL 3150]; Treas.Reg. § 31.3121(d)–1(c) (1980); Rev.Rul. 57–21, 1957–1 C.B. 317.

Although each factor is important, the test usually considered fundamental is set out in a Treasury regulation:

Generally, such relationship exists when the person for whom services are performed has the right to control and direct the individual who performs the services, not only as to the result to be accomplished by the work but also as to the details and means by which that result is accomplished. That is, an employee is subject to the will and control of the employer not only as to what shall be done but how it shall be done. In this connection, it is not necessary that the employer actually direct or control the manner in which the services are performed; it is sufficient if he has the right to do so.

Treas.Reg. § 31.3121(d)–1(c)(2) (1980).

Thus, no actual control need be exercised, as long as the employer has the right to control. Rev.Rul. 57–21 at 317. PEL, however, argues that when the worker is a professional, the control factor "either becomes reduced in importance or takes on a new interpretation."

■ The extent of control necessary for a professional to qualify as an employee is less than that necessary for a non-professional. In *James v. Commissioner*, 25 T.C. 1296, 1301 (1956) [1956 WL 835], the court found that a doctor was an employee of the hospital even though the hospital's control over the doctor's work was "general". The court stated:

The methods by which professional men work are prescribed by the techniques and standards of their professions. No layman should dictate to a lawyer how to try a case or to a doctor how to diagnose a disease. Therefore, the control of an employer over the manner in which professional employees shall conduct the duties of their positions must necessarily be more tenuous and general than the control over non-professional employees.

25 T.C. at 1301.

The Internal Revenue Service agrees:

In determining what constitutes the requisite degree of direction and control, it must be borne in mind that the methods by which professional men work are prescribed by the techniques and standards of their professions, and the high degree

of skill required by a professional sometimes makes it difficult or impossible for the employer to supervise his services. Therefore, the control of an employer over the manner in which professional employees shall conduct the duties of their positions must necessarily be more general than the control over nonprofessional employees.

Rev.Rul. 57–21 at 317.

PEL's control over the workers was not sufficient to establish an employment relationship even under the lower standard applicable to professionals. Although there is conflicting evidence in PEL's case, the tax court's finding that "[PEL] exercised minimal, if any, control over the workers" is supported by the evidence. The contracts PEL entered into appear to give PEL control over its workers. The right to control, however, was at best illusory.

Almost all workers had a prior equity or ownership interest in the recipient to which they were assigned. PEL had the right to reassign workers but it never exercised that right. PEL had no reason to reassign or fire a worker unless a recipient complained, an unlikely scenario because most workers had some control over the recipient to which they were leased. Similarly, PEL's control over the workers' salaries was illusory, because any change required approval by either the recipient or the worker.

An application of additional factors to PEL's arrangements with its workers demonstrates that the workers were not PEL's employees. PEL did not conduct any screening of the workers except to verify their licenses to practice. Recipients provided the equipment, tools and office space for the workers, recipients furnished the workers with malpractice insurance, and recipients and workers controlled the details of how and when work was to be performed. In light of these facts, the tax court's determination that the workers were not PEL's employees was not clearly erroneous.

AFFIRMED.