**In re JOHNSON TRAVEL AGENCY, Debtor.**

**Bankruptcy No. 87–02428–H3–11.**

United States Bankruptcy Court, S.D. Texas, Houston Division.

March 27, 1990.

Mitchell J. Buchman, Eikenburg & Stiles, Houston, Tex., for debtor.

Melnnie Urban, Asst. U.S. Atty., Houston, Tex., for I.R.S.

## MEMORANDUM OPINION

LETITIA Z. CLARK, Bankruptcy Judge.

Trial was held on the Debtor's Objection to Claim of the Internal Revenue Service as to withholding taxes claimed by Internal Revenue Service to be due from Debtor for the second, third and fourth quarters of 1987. Debtor does not deny that Johnson Travel Agency was in business before, during, and after the time period at issue, or that it had employees subject to withholding before and after the time period at issue, but denies that the individuals who performed the work of Debtor's daily operations during the second, third and fourth quarters of 1987 were employees subject to withholding. Debtor claims instead that during that period these individuals were independent contractors, on the basis that immediately following its March 7, 1987 filing of bankruptcy, Debtor altered its operations in a manner sufficient to change the status of its employees. The court concludes that the individuals were at all times employees subject to withholding. To the extent any findings of fact herein are construed to be conclusions of law, they are hereby adopted as such. To the extent any conclusions of law herein are construed to be findings of fact, they are hereby adopted as such.

### Findings of Fact

1. Revenue Officer Susan Tracy in February of 1987 was assigned the case of Johnson Travel Agency for purposes of collecting back taxes and obtaining unfiled returns. (Tr. 23).

2. Revenue Officer Tracy caused the business and assets of Johnson Travel Agency to be seized in February, 1987 for the purpose of pursuing collection. (Tr. 23).

3. Pursuant to an agreement, and after the filing of the bankruptcy, the Internal Revenue Service released the seizure and Johnson Travel Agency was allowed to resume its business at its regular location. (Tr. 10–11).

4. Revenue Officer Tracy completed a full compliance check in the fall of 1987, and discovered that employment tax returns had been filed showing no wages and no tax liability for the second and third quarters of 1987. Although the returns had been filed, there was a statement on the returns to the effect that all employees had been converted to contract laborers. (Tr. 24; Gov't. Exs. I, J, K).

5. Revenue Officer Tracy attempted to meet with the Debtor to determine the true status of the Debtor's work force. Although Ms. Johnson stated that there were employment contracts in force, she later stated there were no written contracts, characterizing them as merely oral. (Tr. 24–26).

6. Revenue Officer Tracy prepared employment tax returns for the second, third and fourth quarters of 1987 under the authority of 26 U.S.C. § 6020(b), and Ms. Johnson was given the opportunity to appeal the proposed tax, sign the returns, or file corrected returns. (Tr. 26–28, 37–38).

7. Ms. Johnson chose to appeal the proposed tax and met with a member of the appeals staff. The appeal did not resolve the issue. (Tr. 37–38).

8. Johnson Travel Agency filed an unemployment tax return, Form 940, showing wages for the first two months of 1987 only. Revenue Officer Tracy prepared a corrected Form 940 for the entire year. (Tr. 27–28).

9. The liabilities in dispute are employment taxes for the second, third and fourth quarters of 1987, as well as the unemployment taxes for the year 1987. (Tr. 3, 27–28; Gov't. Ex. B).

10. On February 4, 1988, the Internal Revenue Service filed a Request for Payment of Internal Revenue Taxes in the total amount of $55,890.33, covering the second, third and fourth quarters of 1987 employment taxes, plus the unemployment tax liability for 1987. (Gov't. Ex. B).

11. The Request for Payment of Internal Revenue Taxes filed on February 4,

1988, was based on estimated amounts by Revenue Officer Tracy, after she had reviewed prior returns and accounted for current office staff. (Tr. 27).

12. During January and February of 1987, the Debtor withheld income tax and social security tax from the wages paid to its work force. (Tr. 3).

13. Beginning in March of 1987, Debtor stopped withholding income tax and social security tax from the wages paid to its work force. (Tr. 3, 44).

14. After the end of the 1987 taxable year, the Debtor issued Forms 1099 to the following people: Charles M. Sunderland, Charles L. Sunderland, Eugene MacKenzie, Kathleen Reynolds, Helen Juksar, Velma McGartha, Karen Magnum, Randall Jeter, Alex Camacho, Ken Davies, Jim Murray. (Tr. 4).

15. Some of the work force at Johnson Travel Agency was asked to sign a document called Independent Contractor Agreement. No pattern of consistency as to individuals who were so requested, or the date of such requests, emerges. (Tr. 45, 58; Gov't. Ex. C).

16. On February 29, 1988, Debtor's management notified its work force that withholding of income tax and social security tax would again commence effective March 1, 1988. (Tr. 46, 59; Gov't. Ex. E).

17. Marjorie Johnson was the president and owner of Johnson Travel Agency during 1987 and 1988. (Tr. 65–66).

18. Johnson Travel Agency furnished all the equipment, space, supplies and materials necessary for its work force to do their jobs. (Tr. 44, 55, 66, 75).

19. Marjorie Johnson did the hiring and firing for Johnson Travel Agency. (Tr. 42, 46–47, 55, 64, 70, 74).

20. Johnson Travel Agency's major client was the United States Government. (Tr. 18, 56, 78).

21. None of the people that worked at Johnson Travel Agency dealt on his or her own account or worked on any other business than that of Johnson Travel Agency. (Tr. 18, 47, 48, 56, 68, 78–79).

22. Most, if not all, of the work force received a salary rather than commission. (Tr. 48, 55, 69, 79).

23. Marjorie Johnson required regular work hours and required appropriate office attire. (Tr. 19, 47, 56, 63, 68–69, 79).

24. None of the employees incurred any expenses while working for Johnson Travel Agency that were not reimbursed. (Tr. 44, 55, 66, 75).

25. Most employees worked exclusively at the Agency's office or making ticket deliveries from that site. The exception, Ms. Juskar, appears to have done some home work as well, as an accommodation to the employer and a convenience to herself, but this did not change her status as an employee subject to withholding.

26. None of the work force had any ownership interest in Johnson Travel Agency. (Tr. 49, 65–66, 70, 80).

27. The failure to withhold income tax and social security tax has resulted in considerable financial hardship for many of the former employees of Johnson Travel Agency. (Tr. 49–50, 59, 70, 80–81).

28. Other travel agencies requiring similar kinds of work withhold income tax and social security tax from the wages of their workers. (Tr. 50, 59–60, 71, 81).

### Conclusions of Law

The facts above contain sufficient indicia of employer-employee relationship subject to withholding to establish the existence of such a relationship during the time period at issue. See, e.g., elements considered in *Professional & Executive Leasing, Inc. v. Commissioner*, 862 F.2d 751 (9th Cir.1988); *U.S. v. Silk*, 331 U.S. 704, 714–716, 67 S.Ct. 1463, 1468–1470, 91 L.Ed. 1757 (1947).

The court concludes that an employer-employee relationship sufficient to justify the imposition of withholding taxes existed during the time period at issue, that such taxes are due, and that the Proof of Claim of the Internal Revenue Service survives the Debtor's challenge.

A separate Judgment will be entered in conjunction with this Opinion.