**William CHIN; Cecily Chin,**
**Plaintiffs–Appellees,**

v.

**UNITED STATES of America,**
**Defendant–Appellant.**

**No. 93–17232.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 12, 1995.

Decided June 7, 1995.

Loretta C. Argrett and Kevin M. Brown, U.S. Dept. of Justice, Washington, DC, for defendant-appellant.

Sandra G. Scott, San Francisco, CA, for plaintiffs-appellees.

Before: CUMMINGS,* SCHROEDER, and RYMER, Circuit Judges.

SCHROEDER, Circuit Judge:

The United States appeals the district court's judgment after a bench trial in favor of Dr. William Chin and his spouse Cecily Chin in Dr. Chin's action for a refund of federal income taxes for the 1985 tax year. The government claims the district court clearly erred in finding that Chin was an independent contractor, rather than an employee, of the Agency for International Development ("AID"). If Chin was an independent contractor for tax year 1985, he qualifies for the "foreign earned income" exclusion from gross income under § 911 of the Internal Revenue Code, 26 U.S.C., and is thus entitled to a refund of federal income taxes, penalties, and interest in the amount of $35,878 for 1985. We have jurisdiction, 28 U.S.C. § 1291, and affirm.

## BACKGROUND

William Chin is a world renowned specialist in malariology and holds both a master's degree in Public Health and a medical degree. In December of 1982, Dr. Chin entered into a two-year "personal services contract" with AID to serve as the malaria control advisor to the Country of Pakistan. AID, a U.S. agency, establishes this country's development assistance policy and provides information, technical advice, supplies and personnel to foreign countries for particular projects. AID specifically hired Dr. Chin to provide technical assistance to the Pakistani Directorate of Malaria Control in

---

* Honorable Walter J. Cummings, United States Circuit Judge for the Seventh Circuit, sitting by designation.

its Ministry of Health and Social Welfare to implement the country's malaria control program, a project funded in part by AID. AID extended Chin's contract twice to January of 1987.

Dr. Chin was hired under a personal services contract ("PSC"). The contract included specific provisions regarding salary and continuing education which Chin negotiated with AID. At the time, AID hired three categories of personnel: (1) direct hires, (2) personal services contractors and (3) non-personal services contractors. Direct hires were hired without contracts and for an indefinite term. Personal and non-personal services contractors had written employment contracts that covered specific periods of time. The choice of a PSC format automatically triggered the issuance of biweekly earnings statements that showed, *inter alia,* the amount of federal income and social security withheld by AID, as well as the accrual of vacation and sick leave.

In the late 1980s, the Internal Revenue Service audited many individuals that had PSCs with AID overseas. In response, AID created a procedure whereby either the IRS or a taxpayer could request an opinion and AID would review the PSC to determine if the contract created an employer/employee relationship or independent contractor status. AID sent out a General Notice to contracting officers listing factors indicative of employee status.[1] AID reviewed Dr. Chin's contract and determined that AID did not supervise Chin in the administration of Chin's contract. AID further concluded that the PSC format should not have been used.

For the tax years before 1985, Dr. Chin included his AID salary as taxable gross income on his tax returns. After discussions with other individuals who had contracts with AID and his review of information prepared by the American Foreign Service Agents Association, Chin claimed the foreign income tax exclusion on his AID income for the first time in 1985. When the IRS issued a notice of deficiency disallowing the foreign income tax exclusion, Chin administratively appealed this assessment and the IRS Appeals Office refused to abate the tax deficiency. Dr. Chin then paid the tax and filed an administrative claim for a refund of the $35,878 tax amount for 1985. After the IRS denied his claim for a refund, he brought this suit in district court.

The district court concluded that Dr. Chin was an independent contractor and not an employee of AID, and that he therefore qualified for the foreign income exclusion. The district court founded its holding upon specific findings of fact that included the following:

★ Dr. Chin's office was located at the Ministry of Health, Government of Pakistan, which provided Dr. Chin with a secretary and office furniture.

★ Dr. Chin went to the AID Mission only to collect his mail, to cash checks, to use the cafeteria, and to attend an occasional meeting.

★ He set his own schedule, which generally paralleled the hours of the Ministry of Health—a six-day work week. By contrast, employees at AID worked a five-day week.

★ Dr. Chin's territory comprised the entire country of Pakistan and he spent over one-third of his time in the field, on location.

★ AID did not directly supervise Dr. Chin on a daily basis, nor did it control the details of his work. Chin prepared yearly and quarterly reports for, and attended monthly meetings with, Dr. Davis, the Chief of AID's Health, Population and Control Department.

★ Dr. Chin negotiated with AID for his salary and for continuing education.

---

1. AID uses the following factors in determining whether a PSC is a government employee:
   (a) performance on site in the AID mission
   (b) principal tools and equipment furnished by the U.S. government
   (c) services are applied directly to the integral efforts of AID in furtherance of assigned functions or Mission

   (d) comparable services, meeting comparable needs, are or have been performed in AID or other U.S. government agencies using civil service or foreign service direct hire personnel
   (e) the nature of the services or the way they are provided requires U.S. government services.
   48 C.F.R., ch. 1 § 37.104(d).

★ AID determined that Dr. Chin was not an employee of AID because AID did not supervise him in the administration of the contract and because the contract schedule was not written as one establishing an employee relationship. AID determined that the PSC format should not have been used and that the contract should have been written either as one establishing an independent contractor relationship or as a host country contract.

The district court entered judgment in favor of Dr. Chin. The government timely appealed.

## DISCUSSION

■ The determination of an individual's status as an employee or an independent contractor for tax purposes involves a mixed question of law and fact that is predominantly one of fact which this court reviews for clear error. *Professional and Executive Leasing, Inc. v. CIR*, 862 F.2d 751, 753 (9th Cir.1988) (mixed question of law/fact); *McGuire v. United States*, 349 F.2d 644, 646 (9th Cir.1965) (question of fact).

Section 911(a) of the Internal Revenue Code, 26 U.S.C., permits certain electing individuals, who are bona fide residents in a foreign country for a specified period of time, to exclude from their gross income money earned from sources outside the United States. Subsection (b)(1)(B)(ii) provides that such excludable foreign earned income does not include amounts "paid by the United States or an agency thereof to an employee of the United States or an agency thereof." Section 911 contains no definition of the term "employee." Under federal tax law, courts look to "the usual common law rules" when distinguishing between employees and independent contractors. Treas.Reg. § 31.3121(d)–1(c)(1) (1980). These common law factors include:

(1) the right to control the details of the work;

(2) furnishing of tools and the workplace;

(3) withholding of taxes, workmen's compensation and unemployment insurance funds;

(4) right to discharge; and

(5) permanency of the relationship. *Professional and Executive Leasing, Inc.*, 862 F.2d at 753.

■ The first *Professional* factor, right to control, has been deemed the "fundamental test" in distinguishing employees from independent contractors. *Id.* at 753; *McGuire*, 349 F.2d at 646. The Treasury Regulations similarly make control the locus of concern:

> Generally [an employer/employee] relationship exists when the person for whom services are performed has the right to control and direct the individual who performs the services, not only as to the result to be accomplished by the work but also as to the details and means by which that result is accomplished. That is, an employee is subject to the will and control of the employer not only as to what shall be done but how it shall be done. In this connection, it is not necessary that the employer actually direct or control the manner in which the services are performed; it is sufficient if he has the right to do so.

Treas.Reg. § 31.3121(d)–1(c)(2).

In determining Chin's employment status, the district court properly accorded the first *Professional* factor, right to control, the most weight. We note that the control factor, while primary, is sufficiently flexible to reflect the varying degrees of employer oversight demanded by different occupations. This factor has been markedly qualified in the context of professional employment, particularly that involving medical doctors. *See Flemming v. Huycke*, 284 F.2d 546, 550 (9th Cir.1990); *James v. CIR*, 25 T.C. 1296, 1301 (1956).

The government relies upon the following language from Dr. Chin's contract which it contends is irrefutable evidence of AID's right to control his work:

> Dr. Chin shall work under the policy and program guidance of the Director, Ministry of Health and Social Welfare, government of Pakistan. He shall be responsible and report to the Chief, Office of Health, Population, and Nutrition, USAID/Pakistan, or his/her designee.

The government also points to the contract's additional requirements of regular reports to

AID, income withholding, and leave accrual to support its contention that the district court erred. It is significant, however, that most of these provisions are part of the standard PSC format.

■ Ordinarily, the "objective manifestation of the arrangement between" the taxpayer and the employer points to the taxpayer's status as an employee or independent contractor. *See Juliard v. CIR*, 61 TCM 2683, 2689, 1991 WL 84170 (Tax Ct.1991) ("[T]he language contained in Federal regulations governing USAID personal services contracts, and USAID's actions in requiring a Form W-4 and withholding employment taxes with respect to petitioner, indicate that USAID's intent was that petitioner would be an employee."). In this case, however, the objective indicia of the PSC format and its attendant "employee" trappings do not control our decision concerning Chin's employment status, given the district court's finding that, for reasons of expediency, the PSC format was improperly chosen by AID. The district court specifically found:

> The PSC format was misused by AID overseas. The AID used the PSC format when AID had no intention to retain a right to supervise because it was the easiest and quickest way to place personnel overseas. AID did not have to publicize the PSCs and did not have to offer formal competition for the position.

The evidence in the record supports the district court's finding. AID's assistant general counsel in the Office of Employee and Public Affairs, Jan Miller, reviewed Dr. Chin's contract and concluded that it had been improperly selected as a PSC. Miller based this determination on

> the statement of duties in [Chin's] contract as well as the statement of the former chief of the U.S. AID Mission's Monitoring and Development Office, both of which show that Dr. Chin was assigned a precise set of activities within the host-government ministry, that he was not supervised by an AID employee, that he did not report to an agency employee but instead served as a

liaison between the host ministry and the Mission.

Miller concluded that Dr. Chin's contract

> should have been written as an A.I.D. Non–Personal Services Contract, thereby establishing an independent contractor relationship, or, possibly, a host-country Personal Services Contract, establishing an employer-employee relationship with the recipient government rather than with A.I.D.

Miller's conclusion that the PSC format was improperly selected for Chin was strengthened by Dr. Cornelia Davis' statement and testimony that AID in fact exercised no control over Chin. In 1985, Chin reported to Davis, who held the position of Chief of Health, Population and Nutrition at AID. She stated that Chin's "day-to-day activities were not supervised by me as chief. He was offered the position based on his extensive qualifications and on the assumption that he could and should operate independently with the directorate of malaria control." She characterized Dr. Chin's contact with AID as "periodic Mission contact and support."

As the district court observed, several other common law factors other than control "tilt[ed] towards a finding that AID had some measure of control over Dr. Chin." His assignment was within the scope of the regular business of AID. Under terms of the contract between Dr. Chin and AID, AID had a right to discharge Chin at any time during the contract term, subject to 30–day notice. The district court reasonably concluded that these less weighty factors were offset by AID's lack of intended or actual control over Dr. Chin.

## CONCLUSION

The strong evidence that the PSC format was improperly utilized in hiring Dr. Chin, indicating AID's lack of intent to retain a right of control over Chin, coupled with AID's actual lack of control over Chin's work, provides substantial support for the district court's finding that Chin was an independent contractor. Its decision is not clearly erroneous.

The district court's judgment is AFFIRMED.