T.C. Memo. 2016-19

UNITED STATES TAX COURT

ALFRED S. CO, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 25949-13.                              Filed February 8, 2016.

Jairo G. Cano, Frank Agostino, and Jeffrey M. Dirmann, for petitioner.

Marissa J. Savit and Linda Azmon, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

VASQUEZ, Judge:  Respondent determined deficiencies of $19,071,

$21,783, and $25,473 in petitioner's Federal income tax and accuracy-related

penalties under section 6662(a)[1] of $3,814.20, $4,356.60, and $5,094.60 for 2009,

---

[1] Unless otherwise indicated, all section references are to the Internal

(continued...)

[*2] 2010, and 2011 (years at issue), respectively.[2]  The issues for decision are:

(1) whether petitioner's income from the U.S. Department of State, Office of

Overseas Buildings Operations (OBO), qualifies for the section 911 foreign earned

income exclusion and (2) whether petitioner is liable for the section 6662(a)

accuracy-related penalties.

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found.  The stipulation of

facts and the attached exhibits are incorporated herein by this reference.  At the

time his petition was filed, petitioner was a U.S. citizen residing in Monsey, New

York.

Petitioner is a mechanical engineer who graduated from the University of

Santo Tomas in the Philippines.  From 2007 through 2012 he rendered engineering

services exclusively to OBO[3] under two personal service contracts (PSCs) for

---

[1](...continued)
Revenue Code in effect for the years at issue, and all Rule references are to the
Tax Court Rules of Practice and Procedure.

[2]  In the notice of deficiency respondent made certain computational
adjustments to itemized deductions and the AMT resulting from the adjustments to
income.  Petitioner did not challenge these computational adjustments in his
petition. Thus, these adjustments are deemed to be conceded.  See Rule 34(b)(4).

[3]  OBO is responsible for constructing buildings abroad and maintaining the
(continued...)

[*3] various projects in Pakistan, India, Indonesia, United Arab Emirates, and Iraq.

OBO and petitioner executed the first personal service contract (PSC 1) in August

2007. PSC 1 remained in effect until August 2012,[4] at which time OBO and

petitioner executed a second PSC (PSC 2). The PSCs defined, among other

things, petitioner's duties, the scope of petitioner's work, and the process by which

petitioner would be evaluated. Petitioner was bound by, and could not negotiate,

the terms of the PSCs.

During the years at issue petitioner worked under the direct supervision of

an OBO project director. Petitioner inspected the quality of the installation of

building construction mechanics, including the air conditioning, water system,

plumbing, wastewater treatment, and generator installation. He also determined

whether the building mechanics were in accordance with the U.S. Government's

specifications. In order to sign off on a finished project, petitioner had to obtain

final approval from his project manager.

Petitioner was not permitted to delegate his duties to others, hire any

assistants, or work for any other person or entity. He did not own a business and

---

[3](...continued)
security of U.S. facilities abroad.

[4] From 2007 through 2012 PSC 1 was altered by multiple amendments of solicitation/modification of contract.

[*4] did not offer his services to the general public. OBO determined the countries to which petitioner would be sent to work as well as when he would be sent there.

Petitioner received an annual salary for his engineering services.[5] He made no monetary investment in the buildings that he inspected and was not paid per project or per building that he inspected. His salary did not change regardless of how well, or how poorly, he or OBO performed. He was required to prepare daily progress reports and monthly reports summarizing his accomplishments. He received evaluations from his supervisors. OBO had the authority to discipline petitioner.

Petitioner was obligated to work a 40-hour workweek. He was supervised by an OBO employee who determined the number of days and hours that he was required to work. He was required to work additional hours if directed by OBO to do so. For instance, while he was stationed in Iraq, OBO required petitioner to work 55 hours per week. Petitioner was also required to submit biweekly timesheets to OBO, which had to be approved by an OBO supervisor. His biweekly payment was made only upon the certification of his biweekly timesheet.

---

[5] Petitioner's salary was calculated in accordance with the U.S. Government Foreign Service Salary Schedule. Additionally, petitioner's salary for the entire contract period was determined at the time he signed the PSCs.

[*5]  Petitioner was entitled to overtime pay, danger pay allowance, awards, and Sunday premium payments.  He was also entitled to annual leave, sick leave, vacation leave, and compensatory time but was required to obtain approval before taking leave or compensatory time.[6]  Furthermore, OBO provided training to petitioner and paid for two of petitioner's trips to visit his family in the United States.  Moreover, petitioner was reimbursed for travel and health insurance coverage expenses during the years at issue and, in 2011, was given the opportunity to invest his pretax dollars in a section 401(k) plan.

During the years at issue OBO was responsible for providing petitioner with office space, a desk, office equipment, and standard office supplies and utilities that would ordinarily be used by similar Government employees.  OBO was also responsible for giving petitioner access to Government-furnished equipment such as word processors, computers, typewriters, calculators, and copying machines, including necessary supplies.  Petitioner resided in U.S. Government-furnished quarters during the years at issue.  He provided his own air conditioning temperature gauge and the "welding sizes of a weld" for his work.  He kept the equipment after the termination of his employment with OBO.

---

[6]  Petitioner's annual leave and sick leave accrued in accordance with the U.S. Department of State Foreign Affairs Manual (Volume 3).

**[*6]** OBO had the power to terminate the PSCs for cause and for convenience at any time upon 30 days' written notice. Petitioner also had the power to terminate the PSCs upon 30 days' written notice. OBO terminated PSC 1 for convenience in August 2012 and PSC 2 in December 2012.

OBO issued petitioner Forms W-2, Wage and Tax Statement, for the years at issue.[7] OBO withheld Federal income tax and FICA taxes and remitted them to the Internal Revenue Service (IRS). Petitioner attached to his returns for the years at issue Forms 2555, Foreign Earned Income, electing the foreign earned income exclusion for each year.[8] On July 31, 2013, the IRS sent petitioner a notice of deficiency for the years at issue disallowing the foreign earned income exclusion and determining accuracy-related penalties under section 6662(a). Petitioner disputed the IRS deficiency determinations by timely filing a petition for redetermination.

---

[7] Petitioner had access to a U.S. Government Web site called Employee Express, from which he was able to print Forms W-2 and earnings and leave statements.

[8] In 2009 respondent examined petitioner's 2007 and 2008 tax returns, and during the audit process the IRS auditor informed petitioner that he was entitled to claim the foreign earned income exclusion for each of those years.

[*7]                                     OPINION

I.      Burden of Proof

As a general rule, a notice of deficiency is entitled to a presumption of

correctness, and the taxpayer bears the burden of proving the Commissioner's

deficiency determination incorrect.  Rule 142(a); Welch v. Helvering, 290 U.S.

111, 115 (1933); Bronstein v. Commissioner, 138 T.C. 382, 384 (2012).

However, under section 7491(a), if the taxpayer produces credible evidence with

respect to any factual issue relevant to ascertaining the taxpayer's liability for tax

and meets other requirements, the burden of proof rests on the Commissioner as to

that factual issue.  See Higbee v. Commissioner, 116 T.C. 438, 440-441 (2001).

Our conclusion here is based on the preponderance of the evidence, and thus the

allocation of the burden of proof is immaterial.  See Estate of Bongard v.

Commissioner, 124 T.C. 95, 111 (2005).

II.     Foreign Earned Income Exclusion

A.      Introduction

We must decide whether petitioner's income from OBO qualifies for the

section 911 foreign earned income exclusion.

Section 61(a) specifies that "[e]xcept as otherwise provided", gross income

includes "all income from whatever source derived".  The United States employs a

[*8] worldwide tax system, taxing its citizens on their income regardless of its geographic source. See Crow v. Commissioner, 85 T.C. 376, 380 (1985). There are, of course, exceptions to the general rule, such as section 911. However, exemptions and exclusions from taxable income are construed narrowly, and taxpayers must bring themselves within the clear scope of the exclusions. See, e.g., Commissioner v. Jacobson, 336 U.S. 28 (1949).

Section 911(a) permits a "qualified individual" to exclude from gross income "foreign earned income". Foreign earned income is "the amount received by such individual from sources within a foreign country * * * which constitute earned income attributable to services performed by such individual". Sec. 911(b)(1)(A). However, pursuant to section 911(b)(1)(B)(ii), the foreign earned income for an individual does not include amounts "paid by the United States or an agency thereof to an employee of the United States or an agency thereof". This exception was designed to prevent U.S. Government employees from escaping taxation on their income by both the United States and the foreign governments. See Soboleski v. Commissioner, 88 T.C. 1024, 1030 (1987), aff'd without published opinion, 842 F.2d 1292 (4th Cir. 1988).

There is no dispute that petitioner was paid by an agency of the United States. Petitioner's entitlement to the foreign earned income exclusion depends

[*9] upon the classification of petitioner's employment relationship with OBO during the years at issue. Petitioner argues that his relationship with OBO for the years at issue was that of an independent contractor and that therefore he is entitled to exclude his income from OBO as "foreign earned income" within the purview of section 911(b)(1)(A). Respondent argues that petitioner's relationship with OBO for the years at issue was that of an employee and that therefore he is not entitled to the exclusion.

B.    Employer-Employee Relationship

The term "employee" is not defined in the Code; therefore, common law rules must be applied to determine whether an individual is an employee. Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 322 (1992); Matthews v. Commissioner, 92 T.C. 351, 360 (1989), aff'd, 907 F.2d 1173 (D.C. Cir. 1990); Simpson v. Commissioner, 64 T.C. 974, 984 (1975). Whether an employer-employee relationship exists is a question of fact. Air Terminal Cab, Inc. v. United States, 478 F.2d 575, 578 (8th Cir. 1973); Prof'l & Exec. Leasing, Inc. v. Commissioner, 89 T.C. 225, 232 (1987), aff'd, 862 F.2d 751 (9th Cir. 1988). If an employer-employee relationship exists, its characterization by the parties as some other relationship, such as principal-independent contractor, is of no consequence. Sec. 31.3121(d)-1(a)(3), Employment Tax Regs.

**[\*10]**      1.      <u>Enumerated Factors</u>

This Court has enumerated the following factors in determining whether an employee-employer relationship exists:  (1) the degree of control exercised by the principal over the details of the work; (2) which party invests in the facilities used in the work; (3) the opportunity of the taxpayer for profit or loss; (4) whether the principal has the right to discharge the taxpayer; (5) whether the work is part of the principal's regular business; (6) the permanency of the relationship; and (7) the relationship the parties believe they are creating.  <u>Weber v. Commissioner</u>, 103 T.C. 378, 387 (1994), <u>aff'd per curiam</u>, 60 F.3d 1104 (4th Cir. 1995); <u>Prof'l & Exec. Leasing, Inc. v. Commissioner</u>, 89 T.C. at 232; <u>Simpson v. Commissioner</u>, 64 T.C. at 984-985; <u>see also</u> <u>United States v. Silk</u>, 331 U.S. 704, 716 (1947).  No single factor is dispositive.  <u>Simpson v. Commissioner</u>, 64 T.C. at 985.  All of the facts and circumstances must be studied.  <u>Prof'l & Exec. Leasing, Inc. v. Commissioner</u>, 89 T.C. at 232.

While all of the above factors are important, the "right to control" is the "master test" in determining the nature of a working relationship.  <u>Matthews v. Commissioner</u>, 92 T.C. at 361.  Both the control exercised by the alleged employer and the degree to which the alleged employer may intervene to impose control must be examined.  <u>Radio City Music Hall Corp. v. United States</u>, 135

**[*11]** F.2d 715, 717 (2d Cir. 1943); <u>DeTorres v. Commissioner</u>, T.C. Memo. 1993-161. "[N]o actual control need be exercised, as long as the employer has the right to control." <u>Prof'l & Exec. Leasing, Inc. v. Commissioner</u>, 862 F.2d at 753. In order for an employer to retain the requisite control over the details of an employee's work, the employer need not direct each step taken by the employee. <u>Prof'l & Exec. Leasing, Inc. v. Commissioner</u>, 89 T.C. at 234; <u>Gierek v. Commissioner</u>, T.C. Memo. 1993-642. The amount of control required to find an employer-employee relationship varies with different occupations. <u>United States v. W.M. Webb, Inc.</u>, 397 U.S. 179, 192-193 (1970). In fact, the threshold level of control necessary to find employee status is in most circumstances lower when applied to professional services than when applied to nonprofessional services. <u>Azad v. United States</u>, 388 F.2d 74, 77 (8th Cir. 1968); <u>Prof'l & Exec. Leasing, Inc. v. Commissioner</u>, 89 T.C. at 234. "From the very nature of the services rendered by * * * professionals, it would be wholly unrealistic to suggest that an employer should undertake the task of controlling the manner in which the professional conducts his activities." <u>Azad</u>, 388 F.2d at 77; <u>Weber v. Commissioner</u>, 103 T.C. at 388. An alleged employer's control "must necessarily be more tenuous and general than the control over nonprofessional employees." <u>James v. Commissioner</u>, 25 T.C. 1296, 1301 (1956).

[*12]        2.      Analysis

              a.      Degree of Control

We begin our analysis of the seven factors enumerated above with the control factor. The record contains numerous illustrations of OBO's right to control petitioner and its actual control over him.

First, during the years at issue, OBO dictated petitioner's duties and supervised his performance. Petitioner worked under the direct supervision of an OBO project director and was required to maintain and complete daily and monthly reports. He was not permitted to delegate his duties to others or work for any other person or entity. OBO also dictated all terms of the PSCs, including, among other things, petitioner's duties, the scope of petitioner's work, the process by which petitioner would be evaluated, reimbursement policies, travel policies, and termination policies. Petitioner in fact could not negotiate the terms of the PSCs and was required to abide by all terms and conditions mandated by the PSCs.

Furthermore, OBO dictated petitioner's hours, pay, and leave. For instance, OBO set petitioner's work schedule, including the specific days on which petitioner was required to work, as well as the specific hours during which he was required to work. Additionally, OBO determined the countries to which petitioner

[*13] would be sent to work as well as when he would be sent there. Moreover, petitioner was paid a fixed annual salary in biweekly increments and in accordance with the Foreign Service Scale. In addition to his salary, OBO permitted petitioner to earn and accrue, among other things, home leave, annual leave, and sick leave. If petitioner wished to take time off from work--to use either annual leave or sick leave--he had to request and obtain permission from OBO.

We are satisfied that petitioner was subject to substantial control by OBO during the years at issue. Although petitioner's working for OBO in a professional capacity limited the amount of control OBO had over his day-to-day activities, OBO dictated his duties, the scope of his work, his work schedule, and the terms of the PSCs and supervised his performance. We therefore conclude that OBO had the right to exercise control over petitioner and in fact exerted a substantial amount of control over him.

b.     Investment in Facilities

The fact that a worker provides his or her own tools or goods generally indicates independent contractor status. Ewens & Miller, Inc. v. Commissioner, 117 T.C. 263, 271 (2001). Conversely, the fact that a worker has no investment in the facilities used in the work is indicative of an employer-employee relationship. Id. During the years at issue petitioner provided his own air conditioning

**[*14]** temperature gauge as well as the "welding sizes of a weld" for his work. It is not clear from the record how much petitioner paid for these tools. Additionally, petitioner's investment did not involve a risk of financial loss as he was able to keep his purchased tools after the termination of his employment. OBO, on the other hand, provided petitioner with Government-furnished quarters, training services, and other supplies. Overall, this factor is neutral.

c.      Opportunity for Profit or Risk of Loss

An opportunity for profit or the risk of loss on the basis of the worker's own efforts and skill indicates independent contractor status. Simpson v. Commissioner, 64 T.C. at 988; see also Rosato v. Commissioner, T.C. Memo. 2010-39. In contrast, earning an hourly wage or fixed salary indicates an employer-employee relationship. See Robinson v. Commissioner, T.C. Memo. 2011-99 (citing James v. Commissioner, 25 T.C. at 1300), aff'd, 487 F. App'x 751 (3d Cir. 2012). During the years at issue OBO paid petitioner in biweekly increments based on petitioner's annual salary rate. Petitioner's pay was determined in advance in accordance with a set Foreign Service Scale and in no way depended on petitioner's performance or completion of projects. Thus, petitioner would earn the same salary regardless of how well, or how poorly, he performed. Additionally, he made no monetary investment in the buildings that he

[*15] inspected. Accordingly, this factor indicates that petitioner was an employee.

### d.    Right To Discharge

The principal's retention of the right to discharge a worker is indicative of a common law employer-employee relationship. Rodriguez v. Commissioner, T.C. Memo. 2012-286 (citing Weber v. Commissioner, 103 T.C. at 391); see also Ellison v. Commissioner, 55 T.C. 142, 152 (1970). During the years at issue OBO had the right to terminate the PSC at any time for cause as well as upon 30 days' advance notice for the convenience of the United States. In fact, OBO terminated PSC 1 for the convenience of the United States and subsequently terminated PSC 2. Accordingly, this factor indicates that petitioner was an employee.

### e.    Integral Part of Regular Business

Where a type of work is part of the principal's regular business, it is indicative of employee status. See Simpson v. Commissioner, 64 T.C. at 989; Rosemann v. Commissioner, T.C. Memo. 2009-185. During the years at issue OBO was in charge of constructing U.S. Government buildings overseas. Petitioner served as a mechanical engineer assigned to one or more of OBO's construction projects and performed a wide range of mechanical engineering functions in support of the planning, implementation, and oversight of the

[*16] assigned projects. This type of work was within the scope of OBO's regular business. Accordingly, this factor indicates that petitioner was an employee.

### f. Permanency of Relationship

A continuing relationship indicates an employment relationship, while a transitory relationship may be indicative of independent contractor status. Ewens & Miller, Inc. v. Commissioner, 117 T.C. at 273; Rosemann v. Commissioner, T.C. Memo. 2009-185. We believe that the relationship between petitioner and OBO during the years at issue was intended to be permanent as opposed to transitory. Petitioner worked exclusively for OBO for five years. He was required to personally perform the services designated in the PSCs. He did not offer his services to the public and did not perform services for any individual or entity other than OBO, as would an independent contractor. See Jacobs v. Commissioner, T.C. Memo. 1993-570; Casety v. Commissioner, T.C. Memo. 1993-410; Gamal-Eldin v. Commissioner, T.C. Memo. 1988-150, aff'd without published opinion, 876 F.2d 896 (9th Cir. 1989). Accordingly, this factor indicates that petitioner was an employee.

### g. Relationship Contemplated by the Parties

The withholding of taxes is consistent with a finding that an individual is a common law employee. See Packard v. Commissioner, 63 T.C. 621, 632 (1975);

[*17] <u>Rosato v. Commissioner</u>, T.C. Memo. 2010-39. OBO provided petitioner with Forms W-2 for the years at issue. Additionally, OBO withheld Federal income tax and FICA taxes from petitioner's income, remitted these amounts to respondent, and paid to respondent FICA taxes on behalf of petitioner. On the other hand, the record indicates that during the years at issue petitioner personally believed that he was not an employee of OBO. Overall, this factor is neutral.

After a consideration of all the evidence, we conclude that petitioner was an employee of OBO during the years at issue and, accordingly, we find that he is not entitled to the exclusion of income under section 911(a).

III.   <u>Accuracy-Related Penalties</u>

We next determine whether petitioner is liable for the accuracy-related penalties.[9] Section 6662(a) and (b)(2) provides that taxpayers will be liable for a penalty equal to 20% of the portion of an underpayment of tax attributable to a substantial understatement of income tax. Section 6662(d)(1)(A) provides that an understatement of income tax is substantial if the amount of the understatement exceeds the greater of (1) 10% of the tax required to be shown on the return or (2) $5,000. Section 7491(c) provides that the Commissioner bears the burden of

---

[9]  While petitioner did not address his liability for the accuracy-related penalties in his petition, we find that it was tried by consent. <u>See</u> Rule 41(b).

[*18] production respecting an individual's liability for the penalty. As discussed above, we have upheld respondent's determinations of deficiencies in petitioner's income tax; respondent has thus met his burden of production.

The section 6662 penalty is inapplicable to the extent the taxpayer had reasonable cause for the underpayment and acted in good faith. Sec. 6664(c)(1). Whether the taxpayer acted with reasonable cause and in good faith is determined on a case-by-case basis, taking into account all pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs. An honest misunderstanding of fact or law that is reasonable in the light of the knowledge, experience, and education of the taxpayer may constitute reasonable cause and good faith. Id. The taxpayer bears the burden of proving that he or she falls within this exception. Higbee v. Commissioner, 116 T.C. at 447.

Although we ultimately disagree with petitioner, we find that it was reasonable under the circumstances for him to believe in good faith that he was not an employee of OBO. Petitioner does not have an accounting, finance, or tax background. Given the high level of difficulty in applying the common law employee test, it is reasonable for someone of petitioner's level of education and experience to operate under the belief that he was not an employee of OBO. See, e.g., Levine v. Commissioner, T.C. Memo. 2005-86 (recognizing that application

[*19] of the common law employee test often results in close cases where courts analyzing similar working arrangements can reach different conclusions).  The worker classification analysis is generally fact intensive and often poses a close question of fact.  For instance, there are cases involving personal service contractors where this Court determined that the taxpayers were employees, see, e.g., Eren v. Commissioner, T.C. Memo. 1995-555, aff'd, 180 F.3d 594 (4th Cir. 1999); Marckwardt v. Commissioner, T.C. Memo. 1991-347; Juliard v. Commissioner, T.C. Memo. 1991-230; Matt v. Commissioner, T.C. Memo. 1990-209, and others where the Court determined that personal service contractors were independent contractors, see, e.g., Chin v. United States, 57 F.3d 722 (9th Cir. 1995); Levine v. Commissioner, T.C. Memo. 2005-86; DeTorres v. Commissioner, T.C. Memo. 1993-161.  Each case, like this one, involved the same analysis--the common law employment test was applied to the facts and circumstances, and the outcome in each case involved the specific facts and circumstances related to the taxpayer's relationship with the Government agency. Moreover, petitioner credibly testified that in 2009 an IRS auditor examined petitioner's 2007 and 2008 tax returns and informed him during the audit that he was entitled to claim the foreign earned income exclusion for each of those years. Petitioner relied on those determinations to prepare his 2009 through 2011 tax

[*20] returns. In the light of all of the circumstances, we conclude that it was reasonable for petitioner to believe in good faith that he was not an employee of OBO and that he was entitled to claim the foreign earned income exclusion. Accordingly, petitioner is not liable for the section 6662(a) penalties for the years at issue.

In reaching our conclusions, we have considered all arguments made by the parties and, to the extent not mentioned above, we conclude they are moot, irrelevant, or without merit.

To reflect the foregoing,

Decision will be entered for respondent with respect to the deficiencies and for petitioner with respect to the section 6662(a) penalties.