T.C. Memo. 1997-490


UNITED STATES TAX COURT


HENRY W. RADDE AND SUSAN K. RADDE, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 14427-96.                    Filed October 29, 1997.


        P worked as an ordained minister for the United
Methodist Church.
        <u>Held</u>:  Among other things, for Federal income tax
purposes, P is to be treated as an employee of the
United Methodist Church.


<u>Joe K. Gordon</u>, for petitioners.

<u>Audrey M. Morris</u>, for respondent.


        MEMORANDUM FINDINGS OF FACT AND OPINION


    SWIFT, <u>Judge</u>:  Respondent determined deficiencies in and

additions to petitioners' joint Federal income taxes as follows:

|       |            | Addition to Tax |
| Year  | Deficiency | Sec. 6651(a)(1) |
|-------|------------|-----------------|
| 1985  | --         | $1,200          |
| 1990  | $5,685     | 1,421           |
| 1991  | 5,658      | 234             |

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.  References to petitioner in the singular are to Henry W. Radde.

After settlement of some issues, the primary issues for decision are:  (1) Whether, for Federal income tax purposes, petitioner is to be treated as an employee of the United Methodist Church (hereinafter sometimes referred to as the church or the Methodist church) or as a self-employed minister, and (2) whether, for self-employment tax purposes, the stipulated fair rental value of parsonages provided to petitioners includes an amount relating to utility and other household expenses of the parsonages.

### FINDINGS OF FACT

Many of the facts have been stipulated and are so found. When the petition was filed, petitioners resided in Hurst, Texas.

During the years in issue, petitioner worked as an ordained minister for the United Methodist Church.  As such, petitioner agreed to abide by and practice the precepts contained in the

Book of Discipline of the United Methodist Church (the Discipline). The Discipline sets forth guidelines and specific duties that petitioner was required to follow in order to retain his position as a minister for the church.

Under the Discipline, bishops were authorized to and did appoint petitioner to various positions within the church. Petitioner was required to accept the appointments in order to retain his position as a minister for the church.

During the first 5 months of 1990, petitioner was appointed and served as senior pastor for the First United Methodist Church in Hurst, Texas. As senior pastor in Hurst, petitioner was required to and did perform typical duties of a pastor. Petitioner conducted worship services, preached, visited and counseled parishioners, performed baptisms, weddings, and funerals, and oversaw the general welfare of the church.

As senior pastor, petitioner reported to and was supervised by a district superintendent. Petitioner submitted reports to the district superintendent regarding the number of baptisms, number of new members, attendance, finances, and other church matters.

Petitioner's congregation organized an executive council and a pastor-parish relations committee to provide guidance and direction to petitioner as their minister. Petitioner worked with this committee to implement various programs for the church.

To a degree, petitioner was allowed to set his own schedule. Generally, petitioner was not required to be in the church during specific hours. Petitioner, however, was required to follow the guidelines set forth in the Discipline as to the doctrine petitioner preached and as to the many duties petitioner performed. Although petitioner was allowed to select specific topics for weekly sermons, petitioner was required to preach the theology of the United Methodist Church.

The majority of petitioner's duties were performed in the church or in an office provided to him, although some duties were performed in a house that was provided by the church to petitioners as a parsonage.

During the first 5 months of 1990, as senior pastor in Hurst, Texas, petitioner received $25,000 in cash compensation from the church in Hurst, and petitioners received the parsonage in which petitioner and his family resided. Petitioner designated $2,167 of the $25,000 in cash compensation as relating to utility and other household expenses of the parsonage.

From June 1990 through 1991, petitioner was appointed and served as district superintendent for the Waco District of the Central Texas Conference of the United Methodist Church (the Conference).

As district superintendent in Waco, petitioner supervised 56 local Methodist churches and more than 40 pastors, made periodic reports to the supervising Methodist bishop, attended

the Conference cabinet meetings, handled administrative duties associated with the district, occasionally preached at a local Methodist church, and counseled parishioners. Petitioner set goals for and discussed the condition of the district with a superintendent's committee.

The majority of petitioner's duties as district superintendent were performed in the district office, in a local Methodist church, and in the supervising bishop's office. Occasionally, some of petitioner's duties were performed in a home that was provided to petitioners as a parsonage.

During the latter 7 months of 1990 and for 1991, as district superintendent, petitioner received $34,443 and $61,558, respectively, in cash compensation from the Conference, and petitioners also received from the Conference the parsonage in which petitioner and his family resided. During this period, petitioner designated $2,050 in 1990 and $3,500 in 1991 of the above cash compensation as relating to utility and other household expenses of the parsonage. Petitioner also received from the Conference an additional $2,333 in 1990 and $4,000 in 1991 in cash compensation as relating to utility and other household expenses of the parsonage.

In 1990 and 1991, petitioner incurred approximately $10,605 and $19,314, respectively, in expenses relating to his work as a minister.

Although petitioners timely filed applications for automatic extension of time to file their Federal income tax returns, petitioners untimely filed their joint Federal income tax returns for 1985, 1990, and 1991. Petitioners' 1985 joint Federal income tax return was untimely filed on September 30, 1992. Petitioners' 1990 and 1991 joint Federal income tax returns were untimely filed on February 8, 1993.

On petitioners' 1990 and 1991 joint Federal income tax returns, petitioners reported the compensation that petitioner received as a senior pastor and as a district superintendent as that of a self-employed minister. Petitioners therefore treated the $10,605 and $19,314 in expenses relating to petitioner's work as a minister as fully deductible business expenses on Schedule C of their respective Federal income tax returns.

For self-employment tax purposes, petitioners reported as self-employment income total net income on the Schedule C's of $31,814 for 1990 and $31,365 for 1991, plus $3,600 for 1990 and $7,500 for 1991. The latter two amounts apparently reflect petitioners' estimate, on their income tax returns, of the rental value of the parsonages and of the additional amounts petitioner designated and received in cash as relating to utility and other household expenses of the parsonages. The total income that petitioners reported for 1990 and 1991 as petitioner's self-employment income for petitioner's work as a minister was $35,414 and $38,865, respectively.

On audit, for Federal income tax purposes, respondent determined that petitioner was to be treated as an employee of the United Methodist Church and not as a self-employed minister. Respondent therefore disallowed petitioners' claimed Schedule C business expenses of $10,605 and $19,314 for 1990 and 1991, respectively, relating to petitioner's work as a minister. Respondent determined that these expenses should be deducted only as miscellaneous expenses on Schedule A of petitioners' income tax returns and allowable only to the extent that the expenses exceed 2 percent of petitioners' adjusted gross income.

For self-employment tax purposes, respondent determined that petitioners' calculation of self-employment income was underreported. Respondent increased petitioner's total self-employment income to $52,870 for 1990 and $50,903 for 1991. Respondent's adjustments, a number of which are now agreed to, were based primarily on an increase in the value of the parsonages and an increase in the amounts petitioners reported as relating to utility and other household expenses of the parsonages. Respondent, for 1985, 1990, and 1991, also determined the late filing additions to tax against petitioners.

The parties now stipulate that in 1990, the parsonage in Hurst had a fair rental value of $500 per month, and that in 1990 and 1991, the parsonage in Waco had a fair rental value of $1,200 per month.

OPINION

For Federal income tax purposes, an ordained minister of a church may be treated as an employee or as a self-employed individual.  The resolution of this issue affects the manner and extent to which related expenses may be deducted on a minister's income tax return.  If a minister is treated as an employee of the church, the minister's expenses will be deductible only on Schedule A of the income tax return subject to a 2-percent floor.  If a minister is treated as a self-employed individual, the minister's expenses will be fully deductible as business expenses on Schedule C of the income tax return.

Whether a minister, for Federal income tax purposes, is treated as an employee or as a self-employed individual has no effect upon a minister's self-employment tax liability because under section 1402(c)(2)(D) a minister's income is treated as self-employment income.  However, in order to determine whether petitioner's expenses are deductible for income tax purposes on Schedule A or Schedule C of petitioners' income tax returns, we must determine whether petitioner is to be treated as an employee.

Whether an employer/employee relationship exists in a particular situation involves a question of fact.  Weber v. Commissioner, 103 T.C. 378, 386 (1994), affd. per curiam 60 F.3d 1104 (4th Cir. 1995); Professional & Executive Leasing, Inc. v. Commissioner, 89 T.C. 225, 232 (1987), affd. 862 F.2d 751 (9th

Cir. 1988). The common-law definition of employee controls. Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 322-323 (1992); Weber v. Commissioner, supra at 386.

Relevant factors used to analyze whether an individual is to be treated as an employee include the following: (1) The degree of control exercised by the principal over the details of the work; (2) the degree of investment by the individual in the equipment used in the work; (3) the opportunity for profit or loss; (4) whether or not the individual is subject to discharge; (5) whether the work is part of the principal's regular business; (6) the permanency of the relationship; and (7) the intent of the parties. Weber v. Commissioner, supra at 387; Professional & Executive Leasing, Inc. v. Commissioner, supra at 232; Simpson v. Commissioner, 64 T.C. 974, 984-985 (1975).

Section 31.3401(c)-1(b), Employment Tax Regs., defines the employer/employee relationship as follows:

> (b) Generally the relationship of employer and employee exists when the person for whom services are performed has the right to control and direct the individual who performs the services, not only as to the result to be accomplished by the work but also as to the details and means by which that result is accomplished. That is, an employee is subject to the will and control of the employer not only as to what shall be done but how it shall be done. * * * In general, if an individual is subject to the control or direction of another merely as to the result to be accomplished by the work and not as to the means and methods for accomplishing the result, he is not an employee.

In Weber v. Commissioner, supra, we concluded that a Methodist minister was to be treated as an employee for Federal income tax purposes.

Petitioners contend that petitioner was self-employed and that Weber v. Commissioner, supra, should be applied on a prospective basis only, not to petitioner for the years at issue herein. Petitioners emphasize that petitioner set his own hours and was not required to account for his time or to submit detailed reports of his activities. We disagree.

The structure of the United Methodist Church provides several levels of supervision for its ministers. As senior pastor in Hurst, Texas, petitioner was supervised by a district superintendent and was required to abide by the Discipline and to report statistics concerning his congregation. Petitioner worked with an executive council and a pastor-parish relations committee consisting of members of his congregation. When petitioner served as a district superintendent, his duties involved those typically associated with an employee. Petitioner supervised 56 churches and more than 40 pastors and reported directly to the Conference bishop.

As a minister of the United Methodist Church, petitioner agreed to abide by the duties set forth in the Discipline. In giving sermons, petitioner was required to preach the doctrine of the United Methodist Church.

Petitioner was appointed by a bishop to positions he held. Under the Discipline, in order to remain a Methodist minister petitioner was required to accept such positions.

Petitioners have failed to distinguish the instant case from the facts of Weber v. Commissioner, supra.

We conclude that for 1990 and 1991, petitioner should be treated as an employee of the United Methodist Church. Petitioners' expenses of $10,605 for 1990 and $19,314 for 1991 relating to petitioner's work as senior pastor and as district superintendent (subject to further adjustments agreed to by the parties) are not allowable for income tax purposes as Schedule C business expenses but only as miscellaneous itemized deductions on Schedule A, subject to the 2-percent floor.

As explained, even though petitioner, for Federal income tax purposes, is to be treated as an employee, for self-employment tax purposes, petitioner's cash compensation and the fair rental value of the parsonages and the amounts petitioner received relating to expenses of the parsonages are subject to self-employment taxes. Sec. 1402(a)(8); sec. 1.1402(a)-11(a), Income Tax Regs. Accordingly, for self-employment tax purposes, all amounts received by petitioner as compensation are to be treated as self-employment income including the stipulated fair rental value of the parsonages and the amounts petitioner received relating to expenses of the parsonages.

Petitioners allege that this stipulated fair rental value of the parsonages already includes an amount reflecting the amounts petitioner either designated or received in cash relating to their utility and other household expenses. Accordingly, petitioners claim that the adjustment that respondent made with respect to the parsonages and related items should now be reduced by the amounts that petitioner either designated or received in cash relating to their utility and other household expenses.

Petitioners bear the burden of proving that respondent's adjustments are incorrect. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933).

Petitioners have not proven that the stipulated fair rental value of the parsonages already includes amounts petitioner designated or received in cash relating to the utility and other household expenses of the parsonages. In calculating petitioner's self-employment income, no reduction is to be made to respondent's adjustments relating to petitioner's self-employment tax liability.

Addition to Tax

Section 6651(a)(1) provides for an addition to tax for failure to timely file a Federal income tax return. The addition to tax is 5 percent of the amount required to be shown as tax on the return for every month the return is late, but not exceeding 25 percent. This addition to tax will not be imposed if it is

shown that the failure to file is due to reasonable cause and not due to willful neglect.

Petitioners argue that in 1983 petitioner's father's death and a difficult move caused petitioner to become seriously depressed and provided reasonable cause for petitioners' failure to timely file their joint Federal income tax returns for 1985, 1990, and 1991.

Petitioners have failed to establish reasonable cause. Rule 142(a); Welch v. Helvering, supra. Petitioners have not established that petitioner's alleged depression constitutes reasonable cause for their failure to timely file their Federal income tax returns. Petitioners did timely file applications for automatic extension of time to file U.S. individual income tax returns, which shows that petitioners were aware of their tax obligations. For 1985, 1990, and 1991 petitioners are liable for the additions to tax under section 6651(a)(1).

To reflect the foregoing,

Decision will be entered

under Rule 155.