T.C. Memo. 2000-237

UNITED STATES TAX COURT

KENNETH W. FRISCHE, Petitioner $\underline{v}$.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 8919-98.                          Filed August 4, 2000.

Kenneth W. Frische, pro se.

Fred E. Green, Jr., for respondent.

MEMORANDUM OPINION

COUVILLION, Special Trial Judge:  Respondent determined
deficiencies of $758, $1,823, and $1,862 in Federal income taxes,
respectively, for petitioner's 1994, 1995, and 1996 tax years and
the accuracy-related penalty under section 6662(a)[1] in the
amounts of $365 and $372, respectively, for 1995 and 1996.

---

[1]     Unless otherwise indicated, section references are to
the Internal Revenue Code in effect for the years at issue.

The issues for decision are: (1) Whether petitioner was engaged in a trade or business as an independent contractor or as an employee during the years at issue; (2) whether petitioner is entitled, in connection with his activity, to a deduction for meals for 1995 and 1996; and (3) whether petitioner is liable for the section 6662(a) penalty for the years 1995 and 1996.[2]

Some of the facts were stipulated. Those facts and the accompanying exhibits are so found and are incorporated herein by reference. At the time the petition was filed, petitioner's legal residence was Reno, Nevada.

Petitioner was a process server. He began this activity in 1983, when he lived in the San Francisco, California, bay area. In 1987, he moved to Reno, Nevada, and continued the activity there. In 1998, he discontinued the activity and took a full-time job with a gambling casino.

In the Reno, Nevada, area, during the 3 years at issue, petitioner's process-serving activity was conducted through the Reno Carson Messenger Service (the Messenger Service) that was owned by a third party. Petitioner derived all of his process-serving work from the Messenger Service. Petitioner was required to use his own vehicle and was assigned a certain geographic area

---

[2] In the notice of deficiency, respondent disallowed a deduction for utilities claimed by petitioner for 1994 and 1995. At trial, petitioner conceded this adjustment.

in and around Reno, Nevada, for his process services.

Petitioner considered himself an independent contractor for tax purposes. He reported his process-serving income and claimed his expenses on his Federal income tax returns on a Schedule C, Profit or Loss From Business. Petitioner realized a net profit for each of the years at issue.

Petitioner's earnings from his activity were paid to him by the Messenger Service. For each year at issue, the Messenger Service issued to petitioner Internal Revenue Service (IRS) Forms W-2, Wage and Tax Statement, reflecting the amounts paid to petitioner for his services. The Forms W-2 classified petitioner's remunerations as wages. The Messenger Service withheld Social Security and Federal income taxes on the payments. Petitioner, however, on his Federal income tax returns, reported the Form W-2 amounts as gross income on Schedule C. Petitioner claimed deductions for expenses related to his activity, consisting of car and truck expenses, meals and entertainment, and utilities. Although he realized a net profit for each of the years at issue, petitioner did not include with his returns the appropriate schedules for self-employment taxes.

In the notice of deficiency, respondent determined that petitioner was not an independent contractor but, rather, was an employee and that his earnings from the Messenger Service constituted salary or wages. Respondent further determined that

the expenses incurred by petitioner in connection with his activity constituted unreimbursed employee business expenses that were deductible on Schedule A, Itemized Deductions, but subject to the limitation of section 67(a). For the 3 years at issue, respondent allowed all the car and truck expenses claimed by petitioner on his Schedule C as itemized deductions. Similarly, respondent allowed petitioner an itemized deduction for meals for 1994 but disallowed the amounts claimed for meals for 1995 and 1996.[3] Respondent also disallowed utilities expenses claimed for 1994 and 1995, which petitioner conceded at trial. See supra note 2.

With respect to the first issue, whether an individual is an employee or an independent contractor is a factual question to be answered using common-law principles. See Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 322-325 (1992); Professional & Executive Leasing, Inc. v. Commissioner 89 T.C. 225, 232 (1987), affd. 862 F.2d 751 (9th Cir. 1988); Weber v. Commissioner, 103 T.C. 378, 386 (1994), affd. 60 F.3d 1104 (4th Cir. 1995). In

---

[3] At trial, respondent orally moved to increase the deficiency for 1994 for the disallowance of $2,625 in meal expenses, which respondent contends was erroneously allowed in the notice of deficiency. Although the deductibility of meal expenses is in part a legal question, the meal expenses for 1995 and 1996 were also disallowed for lack of substantiation. Since petitioner had no knowledge prior to trial that respondent would move to increase the deficiency for 1994, respondent's oral motion will be denied.

determining the substance of an employment relationship some of the factors to be considered include: (1) The degree of control exercised by the principal over the details of the work; (2) which party invests in the facilities used in the work; (3) the opportunity of the hired party for profit or loss; (4) whether the type of work is part of the principal's regular business; (5) the permanency of the relationship between the parties to the relationship; (6) whether the principal has the right to discharge the individual; (7) whether the principal provides benefits to the hired party typical of those provided to employees; and (8) the relationship the parties believe they are creating. See Nationwide Mut. Ins. Co. v. Darden, supra at 322-324; Professional & Executive Leasing, Inc. v. Commissioner, supra at 232-233; Weber v. Commissioner, supra at 387. No one factor is determinative; rather, all the incidents of the relationship must be assessed and weighed. See Nationwide Mut. Ins. Co. v. Darden, supra at 324.

The principal's right to control the manner in which the taxpayer's work is performed ordinarily is the single most important factor in determining whether there is a common-law employment relationship. See Leavell v. Commissioner, 104 T.C. 140, 149 (1995). However, the principal need not stand over the taxpayer and direct every move. Moreover, the degree of control necessary to find employee status varies according to the nature

of the services provided. Finally, the Court must consider not only what actual control is exercised but also what right of control exists as a practical matter. See Hathaway v. Commissioner, T.C. Memo. 1996-389.

The Court finds it noteworthy that petitioner did not have clients of his own. Petitioner's sole income as a process server came from the Messenger Service. The Messenger Service determined the geographic area that petitioner was to serve. At least one other person was a process server who worked a different geographic area. Petitioner was required to report or make a return of his service activity to the Messenger Service. Petitioner reported regularly, although not necessarily on a daily basis, to a place maintained by the Messenger Service for the conduct of its trade or business. Although petitioner was not provided a daily schedule of services to be made on any given day, the Messenger Service determined the urgency or the priority for certain services, and petitioner was required to report on the results of his services. On this record, the Messenger Service retained the necessary control over petitioner's activity consistent with an employer-employee relationship. Although petitioner was required to use his own vehicle to make his services, he otherwise had no investment in the work facilities. Petitioner was paid a specific amount for each service he made plus mileage; consequently, he had no opportunity for profit or

loss.  See <u>Eren v. Commissioner</u>, T.C. Memo. 1995-555.  The service work petitioner performed was part of the regular business of the Messenger Service.  The record indicates that the Messenger Service had the right to discharge petitioner.  Finally, it is evident that petitioner and the Messenger Service believed they had an employer-employee relationship because petitioner's earnings each year were reflected by IRS Forms W-2 for salary or wages, a categorization that petitioner never challenged.  The facts do not support a finding that petitioner was an independent contractor.  Petitioner was an employee of the Messenger Service.  Respondent is sustained on this issue.

The second issue is with respect to deductions claimed by petitioner for meals and entertainment on his 1995 and 1996 income tax returns.  On his returns, petitioner claimed, after application of the 50-percent limitation provision of section 274(n), $2,800 and $1,650, respectively, for meals and entertainment for 1995 and 1996, which respondent disallowed.

The geographical area in which petitioner worked was the city of Reno, points north and west of Reno, the Lake Tahoe area, and occasionally east Reno.  None of these areas was at a distance that required petitioner to incur an expense for lodging.  Nevertheless, petitioner incurred expenses for meals.  Petitioner's position is that expenses for meals are deductible while at work.  As he testified at trial, "The meal deduction

should be allowed whether I was away from home or not because I was out there taking care of business. I was in my car all day long."

Section 162(a)(2) allows the deduction of traveling expenses, including meals, while away from home in the pursuit of a trade or business. For a taxpayer to be considered "away from home" within the meaning of section 162(a)(2), the Supreme Court has held that the taxpayer must be on a trip requiring sleep or rest. See United States v. Correll, 389 U.S. 299 (1967). In Barry v. Commissioner, 54 T.C. 1210 (1970), affd. per curiam 435 F.2d 1290 (1st Cir. 1970), this Court applied the Correll rule in disallowing expenses for meals claimed by a taxpayer on 1-day business trips that extended from 16 to 19 hours during which the taxpayer rested briefly once or twice in his automobile but always returned home without incurring an expense for lodging. This Court held, in Barry, that the rest period required for the deductibility of travel expenses requires a rest of sufficient duration in time that necessitates the securing of lodging, and that a mere pause in the daily work routine does not satisfy the requirements of section 162(a)(2). The rationale for allowance of the deduction in away-from-home cases is the taxpayer's significantly higher expenses incurred by reason of the lodging. See United States v. Correll, supra at 304-305. On the other hand, where no lodging expense is incurred, the meal expenses

incurred by the taxpayer do not add to the taxpayer's business expenses because such expenses result from the sort of rest that anyone can, at any time, without special arrangement and without special expense, take in his own automobile or office. See Barry v. Commissioner, supra at 1213; see also Siragusa v. Commissioner, T.C. Memo. 1980-68, affd. without published opinion 659 F.2d 1062 (2d Cir. 1981); Strohmaier v. Commissioner, 113 T.C. 106, 115 (1999).

Petitioner argued that he always claimed meals as a deduction on his income tax returns and that, in 1987, while he was a process server in San Francisco, California, his tax returns for 1985 and 1986 were audited, and his meal expenses were allowed as deductions. He also was audited for his 1990, 1991, and 1992 tax years where the same issue was raised. In this audit, petitioner settled his case for $1,500, even though respondent initially claimed he owed a deficiency of $5,000. Petitioner did not offer any documentary evidence with respect to either audit; consequently, the Court is unable to ascertain what issues were involved or the basis upon which the expenses were allowed. It appears that, in both audits, petitioner settled at the administrative level, and no court proceedings were ever pursued. Even if petitioner's expenses were allowed in prior years under the same factual circumstances of this case, it is well established that respondent is not estopped by an erroneous

application of the law by agents of the IRS.  See Estate of Emerson v. Commissioner, 67 T.C. 612, 617-618 (1977); Automobile Club of Michigan v. Commissioner, 353 U.S. 180 (1957).  The Court, therefore, rejects petitioner's argument and holds that petitioner's deductions for meals for the years 1995 and 1996 are not deductible.  Respondent is sustained on this issue.

Respondent determined that petitioner was liable for the accuracy-related penalty under section 6662(a) for negligence or disregard of rules or regulations under section 6662(b)(1).

Section 6662(a) provides that, if it is applicable to any portion of an underpayment in taxes, there shall be added to the tax an amount equal to 20 percent of the portion of the underpayment to which section 6662 applies.  Under section 6664(c), no penalty shall be imposed under section 6662(a) with respect to any portion of an underpayment if it is shown that there was a reasonable cause for such portion, and that the taxpayer acted in good faith with respect to such portion.

Section 6662(b)(1) provides that section 6662 shall apply to any underpayment attributable to negligence or disregard of rules or regulations.  Section 6662(c) provides that the term "negligence" includes any failure to make a reasonable attempt to comply with the provisions of the internal revenue laws, and the term "disregard" includes any careless, reckless, or intentional disregard of rules or regulations.  Negligence is the lack of due

care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances.  See Neely v. Commissioner, 85 T.C. 934, 947 (1985).  It is well established that the taxpayer bears the burden of proof on this issue.  See Bixby v. Commissioner, 58 T.C. 757, 791 (1972).

The determination of whether a taxpayer acted with reasonable cause and in good faith depends upon the facts and circumstances of each particular case.  See sec. 1.6664-4(b)(1), Income Tax Regs.  Relevant factors include the taxpayer's efforts to assess his or her proper tax liability, the knowledge and experience of the taxpayer, and reliance on the advice of a professional, such as an accountant.  See Drummond v. Commissioner, T.C. Memo. 1997-71.  However, the most important factor is the extent of the taxpayer's effort to determine the taxpayer's proper tax liability.  See sec. 1.6664-4(b)(1), Income Tax Regs.  An honest misunderstanding of fact or law that is reasonable in light of the experience, knowledge, and education of the taxpayer may indicate reasonable cause and good faith.  See Remy v. Commissioner, T.C. Memo. 1997-72.

Petitioner did not directly address this issue at trial; consequently, the Court decides the issue on the totality of the evidence presented.  In that light, the Court notes that petitioner conceded the disallowed utility expenses he had claimed on his 1994 and 1995 returns.  Petitioner did not

maintain accurate books and records with respect to his claimed meals and entertainment expenses that would satisfy the substantiation requirements of section 274(d). See sec. 6001; sec. 1.6001-1(a), Income Tax Regs. There is no evidence in the record that petitioner relied on the advice of a professional, such as an accountant. Petitioner's obvious position, to be surmised from the totality of his testimony, is that he relied on two previous audits by the IRS in which the manner of reporting his process-server income was accepted. As noted earlier, no documentary evidence was presented to show the basis upon which these audits were settled. In the second audit, petitioner paid a deficiency of $1,500 that may or may not have been based on the method of reporting his process-server income. Finally, petitioner was certainly on notice each year when he received IRS Forms W-2 from the Messenger Service that clearly identified his earnings as salary or wages. Salary or wages do not constitute self-employment income, nor is such income gross income from a trade or business activity for purposes of Schedule C. The Court sustains respondent on this issue.

An appropriate order and
decision will be entered.