T.C. Summary Opinion 2006-32

UNITED STATES TAX COURT

FREDERICK DOUGLAS ABDULLAH, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 2721-04S.               Filed February 21, 2006.

Frederick Douglas Abdullah, pro se.

<u>Catherine G. Chang</u>, for respondent.

PANUTHOS, <u>Chief Special Trial Judge</u>:  This case was heard
pursuant to the provisions of section 7463 of the Internal
Revenue Code in effect at the time the petition was filed.  The
decision to be entered is not reviewable by any other court, and
this opinion should not be cited as authority.  Unless otherwise
indicated, subsequent section references are to the Internal

Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined a $6,717 deficiency in petitioner's[1] 2001 Federal income tax and a $1,977 penalty pursuant to section 6662(a). In his answer, respondent asserted an increased deficiency totaling $7,398 and a reduced section 6662(a) accuracy-related penalty of $1,480.

The issues remaining for decision are:[2] (1) Whether amounts petitioner received from various third parties (principals) represent wages paid as an employee or payments as an independent contractor; (2) whether petitioner is entitled to claimed deductions either as miscellaneous itemized deductions (employee) or as Schedule C, Profit or Loss From Business, expense deductions (independent contractor); and (3) whether petitioner is liable under section 6662(a) for an accuracy-related penalty.

## Background

Some of the facts have been stipulated, and they are so found. The stipulation and supplemental stipulation of facts and the attached exhibits are incorporated herein by this reference.

---

[1] A joint 2001 Federal income tax return was filed and the notice of deficiency was issued to Frederick and S. Ghaswala Abdullah. The petition was filed only by petitioner Frederick Douglas Abdullah.

[2] Petitioner agreed that he did not report $255 in interest income received in 2001.

At the time of filing the petition, petitioner resided in Union City, California.

During the taxable year 2001 petitioner received compensation for services from the following principals:

| | |
|---|---|
| Critchfield Mechanical, Inc. (Critchfield) | $6,117.76 |
| Thermal Mechanical, Inc. (Thermal) | 9,698.04 |
| Therma | 63,096.37 |
| Subtotal | 78,912.00 |
| Matheson Mail Trans, Inc. (Matheson) | 5,788.28 |
| Total[1] | 84,700.00 |

[1] Subtotal and total are rounded to the nearest dollar.

The principals reported this compensation to the Internal Revenue Service on respective Forms W-2, Wage and Tax Statement.

Petitioner was a member of the Local 342, Plumbers and Pipefitters Union. Petitioner performed pipefitting work for Critchfield, Thermal, and Therma. In order to perform this work, petitioner was required to obtain a certified Journeyman Pipefitter certification.

Petitioner worked for Critchfield from sometime in 2000 through March 2001. His pay was determined based upon union contracts referred to as "project agreements" which set hourly wages and pay differentials. The contracts permitted petitioner to be hired and fired. Petitioner worked for Thermal for a few weeks during the period from April through June of 2001. From sometime in June through December 2001 petitioner worked for Therma.

Petitioner was paid on an hourly basis for his work as a pipefitter as determined by respective project managers. Petitioner was required to sign in and sign out at the worksite. He typically worked an 8-hour day. Petitioner was required to wear certain safety equipment, submit safety reports, and undergo safety training. Petitioner was supervised on the job by respective project managers. He was subject to discharge if his finished product did not pass certain tests. While petitioner utilized some of his own small tools on the jobs, approximately 90 percent of petitioner's equipment was furnished by the respective companies.

Petitioner also performed part-time work as a driver for Matheson. The company delivered bulk mail for the U.S. Postal Service under a contract negotiated with the International Brotherhood of Teamsters Union. The contract permitted Matheson to hire and fire petitioner. Petitioner would "on load" or "off load" bulk mail and deliver it to various sites as directed by Matheson. The trucks were owned by Matheson. Petitioner would complete route sheets indicating the routes driven, and he was compensated based on the number of routes driven.

Petitioner owned hand tools such as wrenches, screwdrivers, and levels that he kept in his privately owned Mazda automobile. In performing his work as a pipefitter, petitioner would drive his Mazda to various jobsites and take his tools with him. The

record does not reveal the number of trips or distances traveled.

As previously indicated, the above-described income was reported to the IRS on four separate Forms W-2. Petitioner does not assert that he did not receive Forms W-2 from each of the principals.

Petitioner and his wife timely filed a joint Federal income tax return for the taxable year 2001 and attached two Schedules C to the Form 1040, U.S. Individual Income Tax Return. Petitioner reported his combined income from Critchfield, Thermal, and Therma in the amount of $78,912 as gross receipts on a Schedule C. Petitioner listed the nature of the business as "steamfitting and pipefitting" (Schedule C pipefitting). The Schedule C listed deductions as follows:

| Expenses | Amount |
|---|---|
| Advertising | $653 |
| Bad debts from sales or service | 1,953 |
| Car and truck expenses | 3,012 |
| Commissions and fees | 4,524 |
| Insurance (other than heath) | 1,147 |
| Office expenses | 1,765 |
| Repairs and maintenance | 1,336 |
| Supplies | 1,187 |
| Taxes and licenses | 611 |
| Travel | 407 |
| Meals and entertainment | 171 |
| Utilities | 1,944 |
| Total | 18,710 |

Petitioner also claimed a $3,602 deduction for business use of home on the Schedule C.

On a second Schedule C petitioner reported the income from Matheson as $5,778 gross receipts. The nature of the business was listed as "Trucking - General Freight & Postal" (Schedule C trucking). Petitioner claimed deductions on this Schedule C as follows:

| Expenses | Amount |
|---|---|
| Advertising | $636 |
| Car and truck expenses | 2,307 |
| Repairs and maintenance | 475 |
| Taxes and licenses | 150 |
| Meals and entertainment | 756 |
| Total | 4,324 |

The notice of deficiency determined that petitioner was not entitled to the $22,312 expenses ($18,710 plus the $3,602 of home office expenses), claimed on the Schedule C pipefitting. No adjustment was made with respect to the income, except that respondent allowed petitioner a $299 self-employment tax deduction. Respondent made no adjustments to the Schedule C trucking in the notice of deficiency.

In an answer filed with the Court, respondent claims an increased deficiency and seeks to correct adjustments from the notice of deficiency. Respondent claims that the gross receipts reported on the two Schedules C should be treated as salary or wages. Consistent with this, respondent seeks to reverse the $299 self-employment tax deduction previously allowed in the notice of deficiency. Finally, respondent claims that petitioner is not entitled to the $4,324 Schedule C trucking expenses.

## Discussion

### I. Burden of Proof

Generally, the burden of proof is on the taxpayer. Rule 142(a)(1). Under section 7491, the burden of proof shifts from the taxpayer to the Commissioner if the taxpayer produces credible evidence with respect to any factual issue relevant to ascertaining the taxpayer's liability. Sec. 7491(a)(1). However, where the Commissioner raises a new matter or claims an increase in the deficiency, the burden of proof is on the Commissioner. Rule 142(a)(1); Achiro v. Commissioner, 77 T.C. 881, 889-890 (1981); Burris v. Commissioner, T.C. Memo. 2001-49; Jamerson v. Commissioner, T.C. Memo. 1986-302.

As to the adjustments set forth in the notice of deficiency, petitioner has neither argued that the burden of proof should shift nor satisfied the criteria that would cause the burden of proof to shift. Given the lack of documentation and information provided by petitioner, we conclude that the burden of proof remains with him as to all adjustments determined in the notice of deficiency. We further hold that the burden of proof is on respondent with respect to the adjustments claimed in the answer filed with the Court.

### II. Petitioner's Employment Status

#### A. Income--Employee Versus Independent Contractor

As indicated previously, this is a new issue first raised by respondent in his answer, and accordingly the burden of proof is

on respondent.  We must decide whether the income that petitioner received was reportable as gross receipts on Schedules C, or whether the amounts are reportable as wages or salary on Form 1040.

The term "employee" is not defined in the Internal Revenue Code for purposes of this income tax issue.  Under these circumstances, we apply common law rules to determine whether an individual is an employee.  Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 323-325 (1992); Weber v. Commissioner, 103 T.C. 378, 386 (1994), affd. 60 F.3d 1104 (4th Cir. 1995).  Whether an individual is a common law employee is a question of fact. Profl. & Executive Leasing, Inc. v. Commissioner, 862 F.2d 751, 753 (9th Cir. 1988), affg. 89 T.C. 225 (1987); Simpson v. Commissioner, 64 T.C. 974, 984 (1975).  Among the relevant factors in determining the nature of an employment relationship are the following:  (1) The degree of control exercised by the principal over the details of the work; (2) the taxpayer's investment in the facilities used in the work; (3) the taxpayer's opportunity for profit or loss; (4) the permanency of the relationship between the parties; (5) the principal's right of discharge; (6) whether the work performed is an integral part of the principal's business; (7) what relationship the parties believe they are creating; and (8) the provision of employee benefits.  NLRB v. United Ins. Co., 390 U.S. 254, 258 (1968);

Profl. & Executive Leasing, Inc. v. Commissioner, supra; Simpson v. Commissioner, supra. No one factor is determinative; rather, all the incidents of the relationship must be assessed and weighed. NLRB v. United Ins. Co., supra.

Upon a review of these factors, we conclude that petitioner was an employee of each of the four principals for which he performed services in 2001.

We first look to the degree of control exercised by the principals. The principals controlled the manner in which petitioner performed his work. With respect to his work as a pipefitter, petitioner was given specific jobs to do, and the work was reviewed and inspected. To retain the requisite control over the details of an individual's work, the employer need not stand over the individual and direct every move made; it is sufficient that the employer has the right to do so. Weber v. Commissioner, supra at 388. We are satisfied that all four of the principals possessed the requisite degree of control over petitioner. This factor supports a finding that petitioner was an employee.

We next consider the extent of petitioner's investment in the facilities used at work. While petitioner used some of his own tools, in the pipefitting activity, the large majority of equipment was owned by the respective principals. With respect to the his work as a truck driver, there is no evidence that

petitioner had any investment in the trucking business. The trucks and equipment for delivery was owned by the principal. Petitioner had no investment in any of the facilities where he performed work. This factor is strongly in favor of treating petitioner as an employee.

The next factor is opportunity for profit or loss. Petitioner received pay based on the hours worked as a pipefitter and was paid based on the routes driven as a truck driver. Petitioner had no risk of loss. Petitioner had no opportunity to increase his profit. This factor supports a finding that petitioner was an employee.

The next factor is the permanency of the relationship. During the tax year 2001 petitioner worked for four different principals. It does not appear that any of these relationships had any permanency. This factor would support a finding in favor of petitioner's being treated as an independent contractor.

We next consider the principal's right to discharge. It is clear that petitioner could be discharged by any of the principals involved. The respective principals had total control of the decision to terminate employment. This factor strongly supports a finding that petitioner was an employee.

The next factor is whether petitioner was an integral part of the business of the principal. Petitioner performed pipefitting work for principals that provided these services and

drove a truck for a delivery company.  It seems clear that petitioner's services were an integral part of the business of the respective principals.  This factor supports the finding that petitioner was an employee.

The next factor is the relationship the parties believe they created.  Each of the principals treated petitioner as an employee.  Petitioner was issued a Form W-2 by each principal, and  there was withholding from petitioner's paycheck.  See Azad v, United States, 388 F.2d 74, 78 (8th Cir. 1968); Weber v. Commissioner, supra at 392.  This factor supports a finding that petitioner was an employee.

The final factor is employee benefits.  There is nothing in this record as to any employee benefits paid by any of the principals.  This factor is neutral.

Considering all the factors, we conclude that petitioner was a common law employee, and accordingly gross income from the four employers involved should have been reported as salary or wages on Form 1040 and not gross receipts on Schedules C.  Further, petitioner is not subject to self-employment tax as determined in the notice of deficiency.

B. Expenses

Based on our conclusions above, it is clear that any expense deductions claimed, if allowable, should be deducted as Schedule A, Miscellaneous Itemized Deductions.

Section 162(a) permits a deduction for the ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business. The performance of services as an employee constitutes a trade or business. See sec. 1.162-17(a), Income Tax Regs. There must be a relationship between the expenditures and the employment. See Evans v. Commissioner, T.C. Memo. 1974-267, affd. in part, revd. in part 557 F.2d 1095 (5th Cir. 1977). Expenses that are personal in nature are generally not allowed as deductions. Sec. 262(a). A taxpayer is required to maintain records sufficient to establish the amount of his income and deductions. Sec. 6001; sec. 1.6001-1(a), (e), Income Tax Regs. A taxpayer must substantiate his deductions by maintaining sufficient books and records to be entitled to a deduction under section 162(a). When a taxpayer establishes that he has incurred a deductible expense but is unable to substantiate the exact amount, we are generally permitted to estimate the deductible amount. Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930). We can estimate the amount of the deductible expense only when the taxpayer provides evidence sufficient to establish a rational basis upon which the estimate can be made. Vanicek v. Commissioner, 85 T.C. 731, 743 (1985).

Section 274(d) supersedes the general rule of Cohan v. Commissioner, supra, and prohibits the Court from estimating the taxpayer's expenses with respect to certain items. Sanford v.

Commissioner, 50 T.C. 823, 827 (1968), affd. per curiam 412 F.2d 201 (2d Cir. 1969). Section 274(d) imposes strict substantiation requirements for listed property as defined in section 280F(d)(4), gifts, travel, entertainment, and meal expenses. Sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985). To obtain a deduction for a listed property, travel, meal, or entertainment expense, a taxpayer must substantiate by adequate records or sufficient evidence to corroborate the taxpayer's own testimony the amount of the expense, the time and place of the use, the business purpose of the use, and, in the case of entertainment, the business relationship to the taxpayer of each person entertained. Sec. 274(d); sec. 1.274-5T(b), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985). Section 274 requires that expenses be recorded at or near the time when the expense is incurred. Sec. 1.274-5T(c)(1), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985). Listed property includes passenger automobiles. Sec. 280F(d)(4)(A)(i).

We first consider the claimed expenses relating to petitioner's employment as a pipefitter. Petitioner presented no documents to support the claimed business expense deductions. To the extent that some of the claimed deductions are subject to the strict substantiation requirements of section 274(d), it is clear that petitioner is not entitled to said deductions. We now

consider some of the other expenses.  Petitioner testified that the $1,953 bad debt expense claimed related to interest paid on personal debt that he incurred while out of work.  It is clear that such interest expense would not be deductible.  Sec. 163(h).  Petitioner testified that the claimed insurance expense related to his privately owned automobile.  Petitioner did not establish that any deductions relating to the use of his privately owned automobile are deductible.  Petitioner also claimed a deduction for business use of his home.  Petitioner provided some minimal information as to activities that took place in a room in his house, but he did not establish that these expenditures constitute an ordinary and necessary expense in relationship to his activity as a pipefitter.  Petitioner did not present any documents or explanations as to other expense deductions claimed.  Based on the above analysis petitioner is not entitled to any of the deductions claimed on his Schedule C pipefitting.

The claimed deductions on petitioner's Schedule C trucking present a different issue.  As indicated, respondent has the burden of proof to establish that the claimed deductions do not relate to petitioner's trucking activity and are not properly deductible as miscellaneous itemized deductions.  Respondent presented no evidence or argument in this regard.  Accordingly we hold for petitioner on this issue.

III.  <u>Section 6662(a) Accuracy-Related Penalty</u>

The final issue for decision is whether petitioner is liable for an accuracy-related penalty under section 6662(a) for the year in issue.

Section 6662(a) imposes a penalty equal to 20 percent of any underpayment of tax that is attributable to either negligence or disregard of rules or regulations, or a substantial understatement of income tax.  See sec. 6662(a) and (b)(1) and (2).

The term "negligence" includes any failure to make a reasonable attempt to comply with the provisions of the internal revenue laws.  Sec. 6662(c); sec. 1.6662-3(b)(1), Income Tax Regs.  The term "disregard" includes any careless, reckless, or intentional disregard.  Sec. 6662(c); sec. 1.6662-3(b)(2), Income Tax Regs.

An understatement of income tax is "substantial" if it exceeds the greater of 10 percent of the tax required to be shown on the return, or $5,000.  Sec. 6662(d)(1)(A).  An "understatement" is defined as the excess of the tax required to be shown on the return over the tax actually shown on the return.  Sec. 6662(d)(2)(A).

Whether the accuracy-related penalty is applied because of negligence or disregard of rules or regulations, or a substantial understatement of tax, section 6664 provides an exception to

imposition of the accuracy-related penalty if the taxpayer establishes that there was reasonable cause for the understatement and that the taxpayer acted in good faith with respect to that portion.  Sec. 6664(c)(1); sec. 1.6664-4(b), Income Tax Regs.; see United States v. Boyle, 469 U.S. 241, 242 (1985).  Although not defined in the Code, "reasonable cause" is viewed in the applicable regulations as the "exercise of ordinary business care and prudence".  Sec. 301.6651-1(c)(1), Proced. & Admin. Regs.; see United States v. Boyle, supra at 246.  The determination of whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all the pertinent facts and circumstances.  Sec. 1.6664-4(b)(1), Income Tax Regs.  Generally, the most important factor is the extent of the taxpayer's effort to assess the proper tax liability, including reliance on the advice of a tax return preparer.  Id.

By virtue of section 7491(c), respondent has the burden of production with respect to the accuracy-related penalty.  To meet this burden, respondent must produce sufficient evidence indicating that it is appropriate to impose the penalty.  See Higbee v. Commissioner, 116 T.C. 438, 446 (2001).  Once respondent meets this burden of production, petitioner must come forward with persuasive evidence that respondent's determination is incorrect.  Rule 142(a); see Higbee v. Commissioner, supra.

As a defense to the penalty, petitioner bears the burden of proving that he acted with reasonable cause and in good faith. See sec. 6664(c)(1); see also Higbee v. Commissioner, supra; sec. 1.6664-4(b)(1), Income Tax Regs.

Respondent satisfied his burden of production under section 7491(a)(1) because the record shows that petitioner substantially understated his income tax for the year in issue. See sec. 6662(d)(1)(A)(ii); Higbee v. Commissioner, supra at 442. Accordingly, petitioner bears the burden of proving that the accuracy-related penalty should not be imposed with respect to any portion of the understatement for which he acted with reasonable cause and in good faith. See sec. 6664(c)(1); Higbee v. Commissioner, supra at 446.

A review of this record reflects that petitioner claimed substantial deductions for which he apparently maintained no records. Further, some of the claimed deductions, like bad debts, which petitioner testified was personal interest, are clearly nondeductible personal items. Based on this entire record, we conclude that petitioner is liable for the penalty under section 6662(a).

Reviewed and adopted as the report of the Small Tax Case Division.

To reflect the foregoing,

Decision will be entered under Rule 155.